J-A27013-19

2020 PA Super 62

| IN THE INTEREST OF: D.N.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 480 EDA 2019 |

Appeal from the Decree Entered January 17, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000207-2018

| IN THE INTEREST OF: D.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 481 EDA 2019 |

Appeal from the Order Entered February 1, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0002405-2016

BEFORE:  BOWES, J., SHOGAN, J., and COLINS, J.*

OPINION BY BOWES, J.:                                    **FILED MARCH 13, 2020**

In these consolidated appeals, A.G. ("Mother") appeals from the January
17, 2019 decree granting the petition filed by the Philadelphia Department of
Human Services ("DHS") to involuntarily terminate parental rights to her son
D.N.G., born in October 2007, and the order changing the permanency goal

_____

* Retired Senior Judge assigned to the Superior Court.

to adoption.[1]  We affirm the goal change, vacate the order terminating parental rights, and remand for further proceedings.[2]

The family court summarized the relevant facts and procedural history as follows:

DHS originally became involved with this family on November 5, 2014.  DHS received a General Protective Services ("GPS") report alleging that[:] Mother had not been providing food to D.N.G. and [his older brother who is not involved in this appeal]; Mother had not been ensuring that D.N.G. was attending school; D.N.G. had been playing in the streets without appropriate supervision; D.N.G. had attention deficit hyperactivity disorder ("ADHD") and was not receiving treatment; Mother was pregnant; Mother had stated that the family home at the time was not her property; [and] Mother was unemployed.  This report was determined to be valid.  [DHS did not immediately remove D.N.G. from the family home.  Instead, it initiated in-home services.]

. . . .

[D.N.G.] is truant.  During the 2014-2015 school year, D.N.G. had 42 unexcused absences and 33 late arrivals to school.  During the 2015-2016 school year, D.N.G. had 31.5 unexcused absences and 18 late arrivals to school.  During the 2016-2017 school year, D.N.G. had 6 unexcused absences and 3 late arrivals to school.  On September 27, 2016, CUA learned that Mother had

_____

[1] While Mother purports to appeal the permanency review order dated January 17, 2019, which is the date that the family court announced in open court its intention to change the permanency goal to adoption, the court did not change the goal on that date.  Instead, the court changed the permanent placement goal in a subsequent permanency review order entered on February 1, 2019. We adjusted the caption accordingly.

[2] As Mother's brief abandoned any argument in support of the appeal from the permanency review order entered on February 1, 2019, at CP-51-DP-0002405-2016, we affirm it without further discussion.  *See Commonwealth v. Heggins*, 809 A.2d 908, 912 n.2 (Pa.Super. 2002) ("[A]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived."); *see also* Mother's brief at 4, 5.

informed D.N.G.'s school counselor that D.N.G. had been truant due to transportation issues from the shelter where the family was residing.

On November 10, 2016, an adjudicatory hearing was held for D.N.G. and [his] siblings. D.N.G. was adjudicated dependent based on truancy and present inability to provide appropriate care and supervision. [D.N.G. remained in Mother's care in the family home.] Mother was ordered to comply with mental health treatment recommendations. Mother was also ordered to ensure D.N.G. attends school on a daily basis with no unexcused absences or [tardiness] as well as to sign all necessary releases. Mother and D.N.G. were referred to the Behavioral Health System ("BHS") for monitoring. The trial court ordered that DHS supervision be implemented for [the] family.

Trial Court Opinion, 5/21/19, at 1-3. Twenty days after the adjudication of dependency, DHS removed D.N.G. from the family home and placed him in foster care, where he currently resides.

Over the ensuing fifteen and one-half months, Mother complied with the permanency plan intermittently and made marginal progress toward reunification. On March 16, 2018, DHS filed petitions in the family court to terminate Mother's parental rights and to change the permanency goal from reunification to adoption.

On January 17, 2019, the family court presided over a combined goal change/termination of parental rights trial. The court appointed Michael Graves, Esquire, as legal counsel for D.N.G. under 23 Pa.C.S. § 2313(a). The guardian *ad litem* from the dependency proceedings, Tracy Chambers-Coleman, Esquire, continued to represent the child's best interests. While Attorney Graves did not present evidence or examine witnesses in support of

his client's opposition to termination of parental rights, he informed the family court that D.N.G. opposed adoption and desired to return to Mother's care. N.T., 1/17/19, at 209-12. Correspondingly, in addition to stating that she did not believe that DHS proved the statutory grounds for the termination of parental rights, the guardian *ad litem* recommended that the family court order a comprehensive bonding evaluation. *Id*. at 216. The family court rejected the guardian *ad litem*'s entreaty even though it expressly acknowledged D.N.G.'s bond with Mother and endorsed future contact. *Id*. at 222-33. Likewise, the family court rejected Mother's request for permanent legal custody ("PLC") in lieu of the adoption, which would alleviate the need to terminate her parental rights. *Id*. 217.

Notwithstanding D.N.G.'s stated preference, the guardian *ad litem's* recommendation, and the court's own validation of the mother-son relationship, the family court granted DHS's petitions in open court, changed the permanency goal to adoption, and involuntarily terminated Mother's parental rights to D.N.G. pursuant to Pa.C.S. § 2511(a)(1), (2), and (b). *Id*. at 234. This timely appeal followed the entry of the written order and decree.

Mother complied with Pa.R.A.P. 1925(a)(2)(i) by filing identical concise statements of errors complained of on appeal simultaneously with her respective notices of appeal. She presents the following questions for our review:

> 1. Whether DHS presented clear and convincing evidence that Mother failed to remediate the conditions that led to the children's

- 4 -

removal, pursuant to 2511(a)(1)(2)(5) and (8) of the Adoption Act?

2. Whether the court erred and abused its discretion by granting the DHS Termination Petition severing Child from Mother in that DHS did not clearly and convincingly prove that it was in the [C]hild's best interest to be adopted, Child had ineffective assistan[ce] of counsel, and Child told the CUA social worker and the Child Advocate [that] Child wished to return home to Mother and did not want to be adopted?

Mother's brief at 4. DHS counters that the certified record supports the family court's determinations as to § 2511(a) and (b) and that the remaining arguments are waived because they were not included in the Rule 1925(b) statement. Regrettably, although listed among the counsel of record, neither Attorney Graves nor the guardian *ad litem* filed a brief or correspondence in this Court. Thus, we are without the benefit of D.N.G.'s positions in this appeal relative to his legal interest and best interests.

The common theme that underlies Mother's second argument is that, despite advising the family court that D.N.G. did not want to be adopted, Attorney Graves neglected to represent that legal position zealously as required by § 2313(a). Mother's brief at 13. Since the vindication of D.N.G.'s right to counsel under § 2313(a) is dispositive, we address it at the outset.

As noted, *supra*, DHS asserts that this argument is waived because it was not included in Mother's Rule 1925(b) statement. We disagree. While Mother framed her issues differently in the Rule 1925(b) statement, as we discuss *infra*, this claim was stated sufficiently for the family court to address

it. *See* Trial Court Opinion, 5/21/19, at 21. Hence, the argument was preserved in the Rule 1925(b) statement.

In contested involuntary termination proceedings, the representation of the child's legal interest is indispensable. 23 Pa.C.S. § 2313(a). Two Supreme Court cases inform our examination of Attorney Grave's representation of D.N.G.'s legal interest. In *In re Adoption of L.B.M.*, 161 A.3d 172, 174 (Pa. 2017) (plurality), and subsequently in *In re T.S.*, 192 A.3d 1080, 1092 (Pa. 2018), the High Court declared that § 2313(a) compels the family court to appoint counsel to represent a child's legal interest in every contested involuntary termination proceeding. The Supreme Court explained, "appointment of client-directed counsel optimizes the protection of the child's needs and welfare, which form the ultimate issue that the trial court must resolve before granting the [termination of parental rights]." *In re Adoption of L.B.M.*, *supra* at 180.

We previously articulated this principle as follows:

The purpose of the statutory requirement . . . [i]s not to create a right in [parents]. It was not intended to benefit a contesting parent or parents or to enhance by force of numbers the position of a contesting adult. Its purpose, rather, was to guarantee that the needs and welfare of the children would be advanced actively by an advocate whose loyalty was owed exclusively to them.

*In re Adoption of N.A.G.*, 471 A.2d 871, 874-75 (Pa.Super. 1984) (footnote omitted).

As the case at bar does not implicate a potential conflict in the concurrent representation of D.N.G.'s best interests and legal interest,

substantively it is dissimilar to the majority of cases that discuss § 2313(a). However, our recent discussion in *In re Adoption of K.M.G*., 219 A.3d 662, 669 (Pa.Super 2019) (*en banc*), *appeal granted*, 221 A.3d 649 (Pa. 2019) is instructive in determining the procedural issues concerning whether Mother can challenge Attorney Graves's representation in the instant appeal. As we stated in *K.G.M.*, "any party has standing to raise the issue of [§ 2313(a) representation] in the orphans' court or Superior Court." *Id*. at 669. Moreover, in *dicta*, we conceded that this Court possesses authority to review issues regarding § 2313(a) representation where, as here, the issue is asserted for the first time on appeal. We explained,

> when a party fails to raise the [representation] issue before the orphans' court and raises it for the first time on appeal[,] . . . the Superior Court should review the record to determine if the record is clear and undisputed about whether the child is able to express "a subjective, articulable preference [to be advanced by counsel during the termination proceedings]" and if so, whether the child's preferred outcome differed from the child's best interest.

*Id*. at 670 (quoting *T.S.*, *supra* at 1089); *see also In Re D.L.B.*, 166 A.3d 322 (Pa.Super. 2017) (addressing challenge to guardian *ad litem*'s representation of legal interest even though issue was raised for first time in appellant's reply brief). Thus, we address the merits of Mother's argument even though she neglected to object to Attorney Graves's representation during the family court proceedings.

The crux of Mother's argument is that Attorney Graves failed to advocate D.N.G.'s legal interests beyond informing the family court that D.N.G. did not

want to be adopted. Mother's brief at 13. She highlights that counsel neglected to present any evidence, call witnesses, or cross-examine DHS witnesses about D.N.G.'s desire to reunite with Mother. DHS counters that **L.B.M.** requires nothing more than the appointment of legal counsel, which occurred herein. DHS's brief at 25. It continues that counsel performed his duty fully by discerning D.N.G.'s preference and reporting it to the court. **Id**. at 26 ("Mr. Graves was not required to take any other steps"). For the following reasons, we reject the agency's shallow perspective of a child's right to counsel pursuant to § 2313(a).

In reference to Attorney Graves's representation, the family court provided the following summary,

> Child was appointed Legal Counsel. Legal Counsel met with Child and had the chance to observe him in the foster home. Child is eleven . . . years . . . old. Child informed Legal Counsel that he has no issues with the foster home or Foster Parent. Child did indicate that he does want to live with his Mother and that he did not want to be adopted.

Trial Court Opinion, 5/21/19, at 23 (citing N.T., 1/17/19, at 209-10)).

Tellingly, during the evidentiary hearing, the family court framed Attorney Graves's § 2313(a) representation as talking to D.N.G. and reporting to the Court. N.T., 1/17/19, at 211. The court's narrow characterization of legal counsel's duties misstates Attorney Graves's obligation to his client pursuant to § 2313(a). While legal representation in this context necessarily involves talking to the child client and reporting the child's preferences to the court, it is in no way limited to those two actions. To the contrary, pursuant

to the majority of justices in *In re Adoption of L.B.M.*, *supra at* 180, Attorney Graves was required to advocate on behalf of D.N.G. and provide zealous client-directed representation of D.N.G.'s legal interests.

We agree with Mother's assertion that Attorney Graves's advocacy was inadequate. It was Attorney Graves's principal obligation as legal counsel to ascertain D.N.G.'s legal interest and promote it. As is apparent from the family court's account and the certified record, Attorney Graves did not represent D.N.G.'s legal interest beyond advising the court of his client's preference. Counsel neglected to present any evidence to support his client's legal position, and while he did cross-examine Ashley Wolfe, the CUA case manager, about the agency's communications with D.N.G.'s birth father, N.T., 1/17/19, at 45-46, counsel did not ask any questions relative to his client's desire to preserve Mother's parental rights. *Id*. at 123. Moreover, counsel declined to question Mother after DHS presented her testimony as if on cross-examination. *Id*. at 195.

Furthermore, counsel declined to present any legal argument in his client's favor. His total representation of D.N.G.'s desire to avoid adoption and return to Mother's custody was the following exchange with the family court:

> **The Court:** All right. So, what can you report to the Court?
>
> **Mr. Graves**: I went and visited the child yesterday . . . at the foster mother's home at around . . . seven p.m. . . . And he stated to me that he does not have any issues in the foster home. . . . [T]he home is fine.

[H]e doesn't have any issues with the foster mother; with his living situation there whatsoever. However, he says that he does not want to be adopted and that he does want to live with his mother. That was what he told me. . . .

**The Court**: Did you discuss if -- if it happens that he cannot be reunified with mom, did you discuss then what?

**Mr. Graves**: Well, again, he said that, you know, there were no concerns or issues with the foster home or the foster parent and that, you know, he'd been there for, you know, over two years. And -- however, he, you know, would -- would not like to be adopted. And he would like to go home.

*Id*. at 209-10.

Thereafter, Attorney Graves summarized his discussion with foster mother, and he informed the court of **foster mother's** preference for adoption over PLC. Tellingly, counsel failed to present PLC to the court as an alternative to adoption, even though that option aligned with his client's legal interest. *Id*. at 210. In fact, Attorney Graves neglected to join or support Mother's entreaty for PLC in lieu of the termination of her parental rights. *Id*. at 217. Similarly, he passed up an opportunity to argue his client's legal interest once the guardian *ad litem* challenged the termination of Mother's parental rights and recommended a bonding evaluation. *Id*. at 216.

Most importantly, Attorney Graves failed to cast the most meaningful legal argument in his arsenal, *i.e.*, the probability that his soon-to-be-twelve-year-old client would refuse to consent to any contemplated adoption.[3]

---

[3] Pursuant to § 2711(a)(1), "consent to an adoption shall be required of . . . [t]he adoptee, if over 12 years of age."

- 10 -

Indeed, by terminating parental rights notwithstanding D.N.G.'s express desire not to be adopted, the family court risked transforming D.N.G. into an orphan without any true purpose. That is an outcome the family court no doubt would be loath to achieve. *See In re Adoption of L.J.B.*, 18 A.3d 1098, 1108 (Pa.Super. 2011) ("[T]he purpose of involuntary termination of parental rights is to dispense with the need for parental consent to an adoption when, by choice or neglect, a parent has failed to meet the continuing needs of the child.").

In sum, based upon our review of the record, we conclude that Attorney Graves's representation did not satisfy the mandate of § 2313(a), because he neglected to advocate for his client's legal interest. Under the circumstances of this case, where the guardian *ad litem* argued against termination and recommended a thorough bond analysis, and where an eleven-year-old stated unequivocally that he desired to return to his mother, it is not possible for legal counsel to zealously represent his client's legal interest merely by engaging in one discussion with the child on the eve of trial and then summarizing that conversation for the family court. Rather than simply reporting a preference to the family court, it was Attorney Graves's obligation to engage in client-directed advocacy on behalf of D.N.G. with regard to the child's preferred outcome. *See L.B.M.*, *supra* at 180. Therefore, we hold that D.N.G. was deprived of his statutory right to counsel to advance his legal interest, a deprivation that continues in this appeal.

Accordingly, we vacate the decree terminating Mother's parental rights and remand for a new termination hearing as to Mother. It is left to the family court to decide whether to appoint substitute legal counsel for the hearing or to direct Attorney Graves to zealously advocate his client's legal interests.

Order affirmed. Decree terminating parental rights vacated, and matter remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/20