J-S21018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: L.S.D.R.-C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.S.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 357 MDA 2023 |

Appeal from the Decree Entered January 26, 2023
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s):  A-9378

BEFORE:   BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED: AUGUST 1, 2023**

R.S.R. (Father) appeals from the order granting the petition filed by the Luzerne County Children and Youth Services (CYS) to involuntarily terminate Father's parental rights to L.S.D.R.-C. (Child).  We affirm.

We adopt the orphans' court's summary of the facts in this case.  ***See*** Orphans' Ct. Op., 3/28/23, at 1-11, 14-16.  Briefly, Child was born in August of 2021.  At the hospital on August 13, 2021, Father dropped Child during an argument with N.M.C. (Mother).  That same day, a shelter care hearing was held and the Child was placed with CYS.  Following a dependency hearing, Child was adjudicated dependent on August 25, 2021.  At that time, the dependency court ordered Father to participate in parenting education and to

_____

[*] Retired Senior Judge assigned to the Superior Court.

obtain and maintain safe and stable housing. Father subsequently relocated to New Jersey and did not participate in any parenting classes.

Father returned to Luzerne County around May of 2022. After a May 10, 2022 permanency review hearing, the dependency court ordered Father to participate in mental health services and drug and alcohol services. Father made appointments with organizations in Luzerne County that provide mental health and drug and alcohol services, but Father did not begin any treatment. Father again relocated to New Jersey and did not obtain any court-ordered treatment in New Jersey. Father had approximately five supervised visits with Child, and he has not seen Child since June 6, 2022. Child has been placed with the same foster parents for almost her entire life and the foster parents intend to adopt Child.

CYS filed a petition to terminate Father's parental rights on September 6, 2022. The orphans' court held a termination hearing on January 23, 2023. Father appeared at the hearing with counsel.[1] Child was represented by Joseph Mashinski, Esq. who served both as Child's guardian *ad litem* (GAL) and as Child's legal counsel.[2] On January 26, 2023, the orphans' court issued

---

[1] The orphans' court also terminated Mother's parental rights in a separate decree also entered on January 26, 2023. Mother did not file a separate appeal and is not a party to the instant appeal.

[2] At the termination hearing, Attorney Mashinski stated that he had determined that there was no conflict between Child's best and legal interests, and the orphans' court accepted Attorney Mashinski's representation that there was no conflict. N.T. Hr'g, 1/23/23, at 3-4; *see also In re Adoption*
*(Footnote Continued Next Page)*

a decree concluding that CYS had presented clear and convincing evidence to support the termination of Father's parental rights under Sections 2511(a)(2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938. Decree, 1/26/23.

Father subsequently filed a timely notice of appeal. Both Father and the orphans' court complied with Pa.R.A.P. 1925.

On appeal, Father raises the following issue:

> Whether the [orphans'] court abused its discretion, committed an error of law and/or there was insufficient, evidentiary support for its finding that [Father's] parental rights should be terminated pursuant to 23 Pa.C.S. Section 2511(a)(2), (5) and (8)?

Father's Brief at 4 (unpaginated) (formatting altered).[3]

Father challenges the orphans' court's decree involuntarily terminating his parental rights. *Id.* at 9 (unpaginated). Father argues that the orphans' court erred in concluding that the conditions that led to the removal or placement of Child continued to exist because CYS did not present evidence

_____

*of K.M.G.*, 240 A.3d 1218, 1236 (Pa. 2020) (stating that where a GAL was appointed to represent both a child's legal and best interests, appellate courts may review *sua sponte* "whether the orphans' court determined that the child's best interests and legal interests did not conflict").

[3] We note that in his Rule 1925(b) statement, Father also claimed that the evidence was insufficient for the orphans' court to conclude that termination of his parental rights was in Child's best interests under 23 Pa.C.S. § 2511(b). *See* Rule 1925(b) Statement, 2/27/23. Father has not argued this claim in his appellate brief. Therefore, Father has abandoned this issue for purposes of appeal. *See Interest of D.N.G.*, 230 A.3d 361, 363 n.2 (Pa. Super. 2020) (stating that "[a]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived" (citation omitted)).

establishing that "any specific concerns which would support continued placement or necessity of services." *Id.* Father contends that "the record does not contain sufficient evidence to determine what the concerns and/or reasons for placement were other than an isolated argument that occurred at the hospital . . . ." *Id.* Father asserts that multiple witnesses testified to "receiving referrals [for Father to be evaluated for services] but not one testified to what the concerns were that necessitated the referrals[,]" and that Jaime Stuart, the CYS caseworker, testified to "[Father's] failure to complete services but not to any current concerns that would necessitate continued placement [of Child]." *Id.*

Initially, before addressing the merits of this issue, we must determine whether Father has adequately developed his claim for review. This Court may raise this issue of waiver *sua sponte*. *See Tucker v. R.M. Tours*, 939 A.2d 343, 346 (Pa. Super. 2007). "The issue of waiver presents a question of law, and, as such, our standard of review is *de novo* and our scope of review is plenary." *Trigg v. Children's Hosp. of Pittsburgh of UPMC*, 229 A.3d 260, 269 (Pa. 2020) (citation omitted).

"It is well-settled that this Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority." *In re M.Z.T.M.W.*, 163 A.3d 462, 465 (Pa. Super. 2017) (citations omitted); *see also* Pa.R.A.P. 2119(a) (providing that the argument section of an appellate brief shall contain discussion of issues raised therein and citation to pertinent legal authorities). "Where an appellate

brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." ***M.Z.T.M.W.***, 163 A.3d at 465-66 (citation omitted and formatting altered).

Here, Father baldly asserts that CYS did not present any evidence establishing why Father was referred to services for mental health, drug and alcohol, or parenting education. Additionally, Father cites generally to 23 Pa.C.S. § 2511(a) and case law discussing the standard for termination of parental rights. **See** Father's Brief at 5-6 (unpaginated). However, Father does not discuss the requirements for termination of parental rights under subsections 2511(a)(2), (5), and (8); Father also has not cited any case law interpreting those subsections. Because Father has failed to provide any support or relevant authority supporting his sole claim of error, we conclude that he has waived that claim. ***See M.Z.T.M.W.***, 163 A.3d at 465-66.

Further, to the extent that Father challenges the adjudication of dependency and the orders directing Father to obtain services for parenting education, mental health, and drug and alcohol to remedy the conditions that led to Child's placement, we note that Father did not raise those claims before the orphans' court. Therefore, those claims are waived. **See** Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"); ***see also Interest of N.N.***, 1631 EDA 2022, 2023 WL 2379250, at *2 (Pa. Super. filed Mar. 7, 2023) (unpublished mem.) (concluding that the father waived his claims that his plan objectives

were irrelevant to his ability to parent the child where he did not raise that argument before the orphans' court).[4]  Additionally because Father has only appealed from the decree terminating his parental rights, he cannot challenge any of the prior dependency orders.  **See Interest of H.B.**, Nos. 1726 MDA 2019, 1727 MDA 2019, 1728 MDA 2019, 1729 MDA 2019, 2020 WL 2554613, at *9 (Pa. Super. filed May 20, 2020) (unpublished mem.) (concluding that in an appeal from a decree terminating the father's parental rights, the father waived any arguments related to the adjudication of dependency because the father did not appeal adjudication of dependency).

However, even if we did not find waiver, Father would not be entitled to relief on the merits.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

**In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (citations omitted and formatting altered).  "[T]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and

---

[4] **See** Pa.R.A.P. 126(b) (providing that this Court may cite to non-precedential decisions of this Court filed after May 1, 2019, for their persuasive value).

resolve conflicts in the evidence." *In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (citation omitted).

The burden is on the petitioner, instantly, CYS, "to prove by clear and convincing evidence that [the] asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). This Court has explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted).

Termination of parental rights is governed by Section 2511, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We note that we need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm an order terminating parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004).

- 7 -

## Section 2511(a)(2)

Section 2511(a)(2) provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

> To satisfy the requirements of [Section] 2511(a)(2), the moving party must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied.

*In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019) (citations and quotation marks omitted).

> Further, this Court has explained:

> The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct.

> [S]ubsection (a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being. Therefore, the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and

- 8 -

strong, continuous parental ties, which the policy of restraint in state intervention is intended to protect. This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it.

Thus, while sincere efforts to perform parental duties, can preserve parental rights under subsection (a)(1), those same efforts may be insufficient to remedy parental incapacity under subsection (a)(2). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous.

*In re Z.P.*, 994 A.2d 1108, 1117-18 (Pa. Super. 2010) (citations omitted and formatting altered).

Additionally, this Court has stressed that "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities." *Interest of D.R.-W.*, 227 A.3d 905, 914 (Pa. Super. 2020) (citation omitted and formatting altered).

As stated above, Father has waived his challenge to the orphans' court's termination of his parental rights under Section 2511(a)(2), (5), and (8). But even if we did not find waiver, we would affirm based on the orphans' court's opinion.[5] *See* Orphans' Ct. Op. at 3-12. Specifically, we agree with the orphans' court's analysis of the evidence presented at the termination hearing, including that Father failed to remedy the conditions that gave rise to Child's placement because Father did not complete his court-ordered mental health treatment, substance abuse treatment, or parenting services. *See id.* at 11-

---

[5] The orphans' court's citations on pages 4 and 12 of its opinion should read "*In the Interest of Lilley*, 719 A.2d 327 (Pa. Super. 1998)."

12; *see also* N.T. Hr'g, 1/23/23, at 9-15, 18-20, 24-26, 31-33, 36-41. Because the orphans' court's findings are supported by competent, clear, and convincing evidence in the record and we discern no error in the orphans' court's legal conclusions, we conclude that the orphans' court did not abuse its discretion by terminating Father's parental rights to Child pursuant to Section 2511(a)(2). *See T.S.M.*, 71 A.3d at 267; *C.M.K.*, 203 A.3d at 262. Accordingly, Father is not entitled to relief on this issue.

## Section 2511(b)

As noted previously, Father has abandoned any challenge to the orphans' court's termination of his parental rights under Section 2511(b). In any event, even if Father had not waived his Section 2511(b) claims, we would agree with the orphans' court's conclusions which properly gave primary consideration to the developmental, physical and emotional needs and welfare of Child. *See In re C.L.G.*, 956 A.2d 999, 1008-09 (Pa. Super. 2008) (*en banc*).

Section 2511(b) states in relevant part:

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. . . .

23 Pa.C.S. § 2511(b).

- 10 -

"[T]he focus in terminating parental rights is on the parent, under Section 2511(a), whereas the focus in Section 2511(b) is on the child." *C.L.G.*, 956 A.2d at 1008 (citation omitted). This Court has explained:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (citations omitted and formatting altered). "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268 (citation omitted); *see also Interest of K.T.*, --- A.3d ---, Nos. 37 WAP 2022, 38 WAP 2022, 2023 WL 4092986, at *18 (Pa. filed June 21, 2023) (explaining that a Section 2511(b) analysis must also consider factors such as "the child's need for permanency and length of time in foster care . . . whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability" (footnote omitted)).

- 11 -

"In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted). The question is whether the bond between the parent and the child "is the one worth saving or whether it could be sacrificed without irreparable harm to" the child. *Id.* at 764. "Section 2511(b) does not require a formal bonding evaluation" and caseworkers may offer their opinions and evaluations of the bond. *Z.P.*, 994 A.2d at 1121 (citation omitted).

Accordingly, we would affirm based on the orphans' court's opinion if Father's Section 2511(b) claims were not waived, in that we agree with the orphans' court analysis of the evidence presented at the termination hearing, which were supported by the record, including that Child has a parental bond with foster parents, whom she calls "Momma and Dada," foster parents provide for Child's physical, developmental, and emotional needs, and Child does not have a parental bond with Father. *See* Orphans' Ct. Op. at 13-16, 18-19; *see also* N.T. Hr'g, 1/23/23, at 68-74. Therefore, even if Father had not abandoned his Section 2511(b) claim, Father is not entitled to relief on this issue. For these reasons, we conclude that the orphans' court's findings are supported by competent, clear, and convincing evidence in the record and we discern no error in the orphans' court's legal conclusions, nor abuse of discretion in its decision to terminate Father's parental rights to Child pursuant

to Section 2511(a)(2) and (b).  **See T.S.M.**, 71 A.3d at 267.  Accordingly, we affirm.

Decree affirmed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/01/2023

| IN THE INTEREST OF | : | IN THE COURT OF COMMON |
|---|---|---|
| | : | PLEAS OF LUZERNE COUNTY |
| L.S.D.R.-C., a Minor | : | ORPHAN'S COURT DIVISION |
| | : | |
| Appeal of R.S.R. | : | NO. A-9378 |
| | : | 357 MDA 2023 |

RECORDED
03/28/2023 10:43:05 AM
JUDICIAL SERVICES & RECORDS
LUZERNE COUNTY
PENNSYLVANIA
Inst Num: 202316043

## OPINION PURSUANT TO PA.R.A.P. 1925(a)

## I.   PROCEDURAL HISTORY

On September 6, 2022, Petitioner, Luzerne County Children and Youth Services (Children and Youth), filed Petitions for the Involuntary Termination of Parental Rights (Petitions) of the natural parents as to the minor child, L.S.D.R.-C., in addition to conducting a goal change hearing before the Court.  A hearing was held on January 23, 2023.

This Court issued decrees terminating the parental rights of Mother and Father on January 25, 2023.  Particularly, Mother's parental rights were terminated pursuant to 23 Pa.C.S.A. §2511(a)(1)(2)(5) & (8), and Father's parental rights were terminated pursuant to 23 Pa.C.S.A. §2511(a)(2)(5) & (8).  In entering the termination decrees, the Court gave primary consideration to the developmental, physical, and emotional needs and welfare of the child pursuant to 23 Pa.C.S.A. § 2511(b).

On February 27, 2023, Father, by and through his Court-Appointed Counsel, filed a Notice of Appeal to the Superior Court and the requisite Statement of Matters Complained of on Appeal.  Father's Statement of Matters Complained of on Appeal is as follows:

1. The Trial Court abused its discretion, committed an error of law, and/or there was insufficient evidentiary support for its finding that Appellant's parental rights should be terminated pursuant to 23 Pa. C.S.A.§2511 (a)(2)(5) and (8).

2. The Trial Court abused its discretion, committed an error of law, and/or there was insufficient evidentiary support for its finding pursuant to 23 Pa. C.S.A.§2511 (b) that it is in the best interest of the minor child to grant the termination of Appellant's parental rights.

3. Appellant reserves the right to amend this document within a reasonable time after review of the transcripts.

## II. <u>FINDINGS OF FACT</u>

There is one minor child in this case, L.S.D.R.-C., born on August 10, 2021. This case involves the proposed termination of Father's parental rights. It is unrebutted that the minor child, L.S.D.R.-C., has been in placement since August 13, 2021. Mother and Father were arguing in the hospital at the time of L.S.D.R.-C.'s birth and Father dropped L.S.D.R.-C. during the argument. Children and Youth received a referral as a result of the incident. N.T. 1/23/2023 at 31.

In meeting its requisite burden of proof by clear and convincing evidence regarding the termination of parental rights of Father, Petitioner offered the testimony of Scott Carey, assistant chief executive officer (CEO) and clinical treatment supervisor at Wyoming Valley Alcohol and Drug Services; Alicia Singer, a therapist at the Robinson Counseling Center and records custodian for Children and Youth matters; Bernie Castle, a caseworker for the Intensive Family

2

Reunification Services (IFRS) program offered through Family Services Association (FSA); and Jamie Stuart, an ongoing caseworker at Children and Youth. Father testified on his own behalf.

III. **CONCLUSIONS OF LAW**

After consideration of the credible evidence as summarized above and more detailed below, the Court concludes:

(1) Children and Youth has shown by clear and convincing evidence that the parental rights of the Father to the minor child, L.S.D.R.-C., should be terminated pursuant to 23 Pa. C.S.A. Section 2511(a)(2), 23 Pa.C.S.A. Section 2511 (a)(5) and 23 Pa.C.S.A. Section 2511 (a)(8).

(2) Children and Youth has shown by clear and convincing evidence that the termination of the parental rights of Father as to the minor child, L.S.D.R.-C., best serves the needs and welfare of the children pursuant to 23 Pa. C.S.A. Section 2511(b).

IV. **DISCUSSION: GROUNDS FOR TERMINATION OF FATHER'S PARENTAL RIGHTS**

The statute permitting involuntary termination of parental rights in Pennsylvania, 23 Pa. C.S.A. Section 2511, sets forth the certain irreducible minimum requirements of care that parents must provide to their children. A parent who cannot or will not meet the requirements within a reasonable time following the intervention by the State may properly be considered unfit and may properly have his or her rights terminated. *In Re: J.T. and R.T.*, 817 A.2d 505 (Pa. Super. 2002).

3

Termination of parental rights is an issue of constitutional dimensions because of the fundamental right of an individual to raise his or her own child. Therefore, in proceedings terminating parental rights, the Petitioner must prove by clear and convincing evidence that the statutory criteria have been met. *Santosky v. Kramer*, 455 U.S. 745 (1982), *In Re: T.R.*, 502 Pa. 165, 465 A.2d 642 (1983). However, as the Pennsylvania Supreme Court has stated "a parent's basic constitutional right to custody and rearing of his or her child is converted upon the failure to fulfill his or her parental duties to the child's right to have proper parenting in fulfillment of his or her potential in a permanent, healthy, safe environment." *In Re: J.A.S., Jr.*, 820 A.2d 774 (Pa. Super. 2003), *citing In the Interest of Lillie*, 719 A.2d 327 (Pa. Super 1998).

## A.    23 Pa. C.S.A. Section 2511 (a)(2)

A Court may terminate parental rights under Section 2511(a)(2) when:

> The repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

Accordingly, Father's parental rights to the child, L.S.D.R.-C., can be terminated under Section 2511(a)(2) of the statute. Credible testimony was presented to show, by clear and convincing evidence. that Father did not complete services addressing his mental health, did not complete services addressing substance abuse and did not complete parenting education services.

Ms. Jamie Stuart testified that she is an ongoing caseworker for Children and Youth. Ms. Stuart stated that there was a history of mental health issues and drug and alcohol issues concerning Mother. According to Ms. Stuart, Mother had

4

four other children in the state of New Jersey. Three of these children were adopted and the fourth child was the subject of a parental rights termination proceeding at the time of trial. *Id.* at 31.

Subsequent to Father physically dropping L.S.D.R.-C. at the hospital during an argument with Mother, the child was placed with Children and Youth on August 13, 2021 via a shelter care order. The minor child, L.S.D.R.-C., was adjudicated dependent by the Court on August 25, 2021. Father was first ordered to participate in parenting education and to obtain and maintain safe and stable housing. *Id.* at 31-33. Thereafter, at a permanency hearing on May 10, 2022, Father was ordered to participate in additional services, including mental health services and drug and alcohol services. *Id.* at 33.

Ms. Stuart testified that Father was referred to Family Services Association for parenting education. According to Ms. Stuart, Father did not complete his course in parenting education. Father was also referred to the Robinson Counseling Center for mental health services. However, Father did not engage in mental health services. Father was additionally referred to Wyoming Valley Alcohol and Drug Services. Ms. Stuart stated that she also made a referral for drug and alcohol services at the Robinson Counseling Center. Ms. Stuart indicated that Father did not complete any substance abuse services. Also, Father had not maintained consistent contact with Ms. Stuart or Children and Youth throughout the case. According to Ms. Stuart, Father's contact with her was sporadic. *Id.* at 37-38.

Ms. Stuart further emphasized that Father's visits with the minor child were scheduled on Mondays and Father only exercised his visits with his child

5

approximately five times throughout the child's placement from August 2021 until the present. Ms. Stuart also stated that Father relocated to the state of New Jersey within two to three months after his child was adjudicated dependent in Pennsylvania. *Id.* at 42. When Father moved out of state, he was offered reimbursement for the cost of his bus tickets in order to travel for visits with his daughter, in addition to being offered a voucher for the cost of the fuel needed to travel to Pennsylvania. *Id.* at 39-40. Ms. Stuart indicated that despite Father being offered these services, he did not utilize these opportunities in order to see his daughter. Ms. Stuart stated that Father was completely aware of the services that he was expected to complete and he did not provide her with any documentation confirming his participation and completion in the services. *Id.* at 40, 44-45.

Ms. Stuart testified that subsequent to Father moving to New Jersey, he returned to Pennsylvania. Father then began working and living with a woman whom he referred to as the child's mother. Ms. Stuart then stated that in July 2022, Father relocated back to New Jersey due to Father claiming that while he was residing in Pennsylvania, he was attacked by someone in the household. *Id.* at 44. Ms. Stuart testified that while Father was living in Pennsylvania, Father visited a total of five times with his child during the period of August 2021 until June 6, 2022. Ms. Stuart stated that all of Father's visits occurred while he was living in Pennsylvania. *Id.* at 46.

Mr. Scott Carey testified that he is an assistant chief executive officer and clinical treatment supervisor at Wyoming Valley Alcohol and Drug Services, which is an outpatient drug and alcohol treatment facility. *Id.* at 9. Mr. Carey

testified that Father was referred to his agency on June 15, 2022. *Id.* at 10. An evaluation was scheduled for Father on June 24, 2022. The appointment was then rescheduled to July 1, 2022 due to a misunderstanding with scheduling. Mr. Carey indicated that the treatment record reflected that on June 30, 2020, the counselor contacted Father via telephone and reminded him of his appointment for the next day at 3:00 p.m. Father confirmed that he would be present. *Id.* at 14. However, the next day, Father did not appear for his appointment. Mr. Carey indicated that there were no additional records indicating that the appointment was rescheduled. *Id.* at 11-12. Mr. Carey stated that a formal "closeout letter" was not sent to Father since the case was never opened and Father was never given any treatment. *Id.* at 15.

Ms. Alicia Singer testified that she is employed at the Robinson Counseling Center, an adult mental health facility. Ms. Singer stated that she is a therapist at the center and also custodian of the records for Children and Youth matters. Ms. Singer explained that she maintains records pertaining to individuals that are referred by Children and Youth. Ms. Singer testified that Father was referred to the Robinson Counseling Center by Children and Youth for a mental health evaluation. Ms. Singer stated that Father was scheduled for a mental health evaluation on July 25, 2022, which he completed over the telephone. *Id.* at 18. According to Ms. Singer, Father was diagnosed with unspecified depressive disorder and unspecified anxiety disorder. Therefore, Father was recommended for therapy every three weeks. However, according to Ms. Singer, the therapy appointments never took place because Father decided to move to New Jersey. Thereafter, Ms. Singer referred Father for substance abuse services. However,

7

Father was not able to receive treatment for substance abuse since the agency did not have a license to practice in New Jersey. *Id.* 19-20. Therefore, Ms. Singer stated that she advised Father to seek treatment for mental health and substance abuse in the county in which he was residing in New Jersey. *Id.* at 20.

Mr. Bernie Castle testified that he is employed at the Family Services Association of Wilkes-Barre Pennsylvania as a caseworker for the Intensive Family Reunification Services (IFRS) parenting education program. Mr. Castle described Family Service Association as a nonprofit agency bringing services to families who are involved with social services such as Luzerne County Children and Youth and Luzerne County Juvenile Delinquency Court. Mr. Castle stated that his agency received a referral from Children and Youth on June 17, 2022. Mr. Castle made arrangements with Father to meet him at the Children and Youth office on July 11, 2022. However, father failed to appear at the meeting. Mr. Castle indicated that he attempted to contact Father several times afterwards; however, his attempts were unsuccessful. Mr. Castle stated that on August 15, 2022, he was advised by the caseworker at Children and Youth that records reflect that Father only had four visits with his child for the preceding year. Mr. Castle stated that he was not able to schedule an appointment with Father since Father did not provide an address at which to contact him in New Jersey. *Id.* 25-26. Mr. Castle indicated that during his prior conversation with Father over the telephone, Father was in agreement to meet with him regarding the parenting program. *Id.* at 26. Mr. Castle testified that he did not have any records or knowledge that Father engaged in or completed the parenting education program at Family Service Association. Mr. Castle testified that he no

8

longer had any contact with Father after his attempt to schedule a meeting with him. Mr. Castle stated that on September 13, 2022, he emailed the caseworker, informing him that the case was closed due to the inability to make contact with Father. *Id.*

Father testified that the reason that he did not complete the drug and alcohol treatment and his parenting classes was due to lack of transportation. He believed that the reimbursement of costs only applied to Pennsylvania and not New Jersey. Father testified that he thought that he had insurance coverage through New Jersey, but he did not have coverage. *Id.* at 49, 52. Father also stated that he was not able to complete his parenting classes and the drug and alcohol classes due to him working and dealing with "a house that was totally corrupted." *Id.* at 51. Father stated that he was confused and did not know how to treat others. *Id.*

When Father was cross examined as to the reason that he did not attempt to complete his services in New Jersey, Father stated that he was beginning to pursue the classes and was working with a community center in New Jersey. *Id.* at 53. According to Father, Children and Youth did not refer him to any service providers in New Jersey and he had to find the services on his own. *Id.* at 53. Father also indicated that even though he only had five in person visits with his daughter, he was also permitted to do video chats on a weekly basis with his daughter because he was not able to use the transportation. *Id.* at 54. Father testified that when he exercised his five visits with the child, he used his mother's truck in order to exercise his visits. *Id.* at 55.

Father testified that the community center where the services are offered, such as parenting classes, mental health services and drug and alcohol services, is only a "four minute walk" from his residence. He further expressed that he was aware of the community center for approximately two years, but did not start participating in those services until shortly before the time of trial. Father did not offer a plausible explanation as to the reason he waited so long to begin participating in the services at the community center. *Id.* at 57. The Court finds that eventhough the child has been in the custody of Children and Youth for approximately sixteen (16) months, Father did not make an effort to commence his services at the time the child was placed. *Id.* at 57.

Father admitted on cross examination that he did not complete or engage in services in Luzerne County. Father also admitted on cross examination that since he moved to New Jersey, he did not make any effort to engage in any of the services in New Jersey until immediately prior to the commencement of the new year of January 2023. *Id.* at 60-61. Father also admitted that he did not request any help in engaging in services in New Jersey. *Id.* at 61. Father alleged that he used to have video chats with his daughter. However, once the video chats stopped, he had a difficult time seeing his daughter in person due to lack of transportation. *Id.* at 63.

Ms. Stuart testified on rebuttal that she specifically informed Father that if he were to purchase a bus ticket in order to see the minor child at the Children and Youth office, he would be reimbursed for the entire trip, including the travel from New Jersey to Pennsylvania, and not just for the cost of the trip only in Pennsylvania. Ms. Stuart also stated that the agency offered Father a gas gift card

for Father's transportation. *Id.* at 66. According to Ms. Stuart, Father was aware of all the reimbursement costs offered to him for transportation. *Id.* at 66. Ms. Stuart testified that she explained the transportation costs to Father two or three times and she did not know the reason Father believed that his reimbursement costs for the buses only pertained to Luzerne county, Pennsylvania and did not include New Jersey. *Id.* at 67.

Based on the testimony of the various witnesses, summarized above, and based upon the evidence presented to the Court, the Court finds that subsequent to the placement of the child on August 13, 2021, Father did not complete the required services for mental health treatment, substance abuse treatment and parenting services. Therefore, the Court finds that Father has not been able to remedy the conditions that gave rise to the placement of the child.

Unlike 23 Pa.C.S.A. §2511(a)(1), subsection (a)(2) does not emphasize a parent's failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being. Therefore, the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and . . . this is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it." (our emphasis added) *In re E.A.P,* 944 A.2d 79 (Pa. Super 2008).

Given the overwhelming evidence and testimony, it is clear that Father has received and/or has been offered extensive services over the years and he failed to benefit from the services. Father was offered services in Pennsylvania; however, he chose to relocate to New Jersey. Father also had available services

11

for him one block away from his residence in New Jersey, yet he chose to wait one year and a half from the date of the child's placement prior to choose to participate in the services.

At this juncture, the child's right to have proper parenting in fulfillment of their potential in a permanent, healthy, safe environment outweighs Father's interest. *In Re: J.A.S., Jr.*, 820 A.2d 774 (Pa. Super. 2003), *citing In the Interest of Lillie*, 719 A.2d 327 (Pa. Super 1998).

## V. DISCUSSION: GROUNDS FOR TERMINATION FOR FATHER

### A. 23 Pa. C.S.A. Section 2511 (a)(5)

A Court may terminate the parental rights under Section 2511(a)(5) when:

> The child has been removed from the care of the parent by the Court or under voluntary agreement with an agency for a period of at least six months, the conditions of which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

Father's parental rights may also be terminated under this provision of the Statute. Under 23 Pa.C.S.A. Section 2511(a)(5), the agency must show: (1) the child have been removed from the care of the parent by the Court for a period of at least six months; (2) The conditions giving rise to placement continue to exist, (3) Those conditions will not be remedied in a reasonable period of time, and (4) Termination of parental rights would best serve the needs and welfare of the child.

12

## (1)& (2) CHILD REMOVED BY THE COURT FOR A PERIOD OF ATLEAST SIX MONTHS AND CONDITIONS CONTINUING TO EXIST

The minor child, L.S.D.R.-C., was originally placed on August 13, 2021. Therefore, the child has been removed from her father for at least six (6) months. It is also clear through the testimony outlined above, that the natural Father has been unable to resolve the issues that gave rise to the placement of the minor child, L.S.D.R.-C.., i.e., lack of participation in parenting courses, not completing mental health services, nor the drug and alcohol services. The overwhelming evidence shows that all of these issues have yet to be remedied by Father.

The Court has recognized this issue above in its analysis of Section 2511(a)(2) and finds the same considerations apply for 2511 (a)(5) that have already been discussed extensively in this opinion. Furthermore, the Court applies this same reasoning in concluding that the natural Father failed to remedy the conditions that originally gave rise to placement of their minor child, L.S.D.R.-C..

## (3) REMEDY OF CONDITIONS IN REASONABLE TIME

Father has had approximately seventeen (17) months to remedy the conditions which gave rise to placement, yet the evidence shows that as of the time of the hearing on January 23, 2023, Father still had not completed any of the required services. This Court finds that Father has been unable to remedy the conditions that gave rise to placement of the minor child within a reasonable time period.

## (4) NEEDS AND WELFARE OF THE CHILD

The term "needs and welfare" of a child refers to both tangible and intangible needs. The intangible needs of a child include love, comfort, security and

13

closeness. *In re Matsock*, 416 Pa. Super. 520, 611 A.2d 737, 747 (1992). There is nothing in the record that shows that the natural Father is presently capable of providing a safe and secure environment for the minor child.

Parental duty is best understood in relation to the needs of a child. These needs, both physical and emotional, cannot be met by a mere passive interest in the development of the child. Meeting a child's needs is a positive duty that requires affirmative performance. *In re Shives*, 363 Pa. Super. 225, 525 A.2d 801, 802 (1987).

A parent is not relieved of his or her responsibility relating to the needs of a child when a child has been placed in foster care. A non-custodial parent has a duty to exert himself to take and maintain a place of importance in the child's life. *In re Adoption of M.J.H.*, 348 Pa. Super. 65, 501 A.2d 648 (1985). A parent must demonstrate a continuing interest in the child and make a genuine effort to maintain communication and association with the child. *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975). Moreover, a parent with a child in foster care has an affirmative duty to work toward the return of the child. *In Re: William L.*, 477 Pa. 322, 383 A.2d 1228 (1978).

When considering the needs and welfare of the child, it is also important for the court to consider the bond between the parent and the child because severance of a strong parental bond can have a detrimental impact on the child. *Matsock*, *supra*.

Ms. Stuart testified that the child has been in placement with the foster parents since October of 2021. Ms. Stuart indicated that she observed the minor child with the foster parents at their home on a monthly basis. Ms. Stuart

14

believes that the minor child has been assimilated into the home with the foster parents. Ms. Stuart further stated that the foster parents also have indicated that they wish to adopt the minor child. The foster parents are aware that in the event they are permitted to adopt the minor child, that the minor child would have all the rights to them as a biological child would have from her biological parents such as inheriting from their estate. Ms. Stuart stated that she did not have any concerns or reservations over the foster parents adopting the minor child. *Id.* at 68-69.

Ms. Stuart testified that throughout the life of the case and the time that the child spent with the foster parents, the child's physical needs were met. The foster parents provide the child with food, clothing and shelter. Ms. Stuart also stated that the foster parents have met the child's developmental needs. They have age appropriate games and toys for the child. The child also attends daycare. In addition to meeting the child's physical needs and developmental needs, the foster parents also meet the child's emotional needs. According to Ms. Stuart, the foster parents provide the child with comfort and praise. Ms. Stuart described the family as very loving and engaging with the child- such as giving hugs and kisses to the child. *Id.* at 69-70.

According to Ms. Stuart, she found that the minor child and the foster parents have a parent/child relationship. Ms. Stuart stated that the child views the foster parents as her parents. Ms. Stuart indicated that the minor child calls the foster parents, "Momma and Dada". Ms. Stuart also found that the minor child and the foster parents have a close bond with one another. Ms. Stuart stated that that she observed Father with the minor child on two occasions. Ms.

15

Stuart stated that she did not find any parent/child relationship between the minor child and Father. Ms. Stuart indicated that the child had not seen her father since June 6, 2022. Ms. Stuart stated that when she did see her father on those four occasions, the child appeared uneasy. Ms. Stuart stated that should the Court grant the agency's petition to terminate Father's parental rights, that the child would not suffer any harmful or detrimental effect. Ms. Stuart stated that she believes that the adoption of the child by the foster parents serves the child's best interest. *Id.* at 72.

Based upon the testimony of Ms. Stuart, the court finds that the termination of Father's parental rights would best serve the needs and welfare of the child.

## VI. DISCUSSION: GROUNDS FOR TERMINATION OF FATHER'S PARENTAL RIGHTS

### A. 23 Pa. C.S.A. Section 2511 (a)(8)

A Court may terminate parental rights under Section 2511(a)(8) when:

The child has been removed from the care of the parent by the Court or under Voluntary agreement with an agency, twelve (12) months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination would best serve the needs and welfare of the child.

Parental rights may be terminated under this provision of the Statute. Under 23 Pa.C.S.A. Section 2511(a)(8), the agency must show: (1) The child has been removed for at least twelve (12) months, (2) The conditions that gave rise to placement continue to exist, and (3) Termination of parental rights would best serve the needs and welfare of the child.

16

(1) **TIME PERIOD OF REMOVAL OF CHILD**

It is undisputed that minor child, L.S.D.R.-C. has been removed from the custody Father since August 13, 2021. Accordingly, this removal has persisted well in excess of the statutorily required twelve (12) months since the date of the child's placement. Thus, the requisite minimum of at least 12 months from removal of the minor child from her Father has elapsed so as to comply with this section of 2511(8).

(2) **CONDITIONS CONTINUING TO EXIST**

The conditions that led to the child's removal from Father's care and into placement were: Father dropping physically L.S.D.R.-C. upon her birth at the hospital during an argument with Mother and failing to complete the court ordered services of parenting education, mental health treatment and drug and alcohol services.

The Court has performed the above extensive analysis in taking testimony and finding credible evidence in concluding that Father did not complete the required services even though the services were accessible to him in Pennsylvania and New Jersey. Therefore, the conditions that gave rise to placement continue to exist.

In discussing and finding that the conditions continue to exist, the Court incorporates its reasoning and the testimony of all witnesses already discussed in this opinion found in the section addressing 23 Pa. C.S. Section 2511 (a)(2).

## (3) **NEEDS AND WELFARE OF THE CHILD**

Once the Court has found that involuntary termination of parental rights is warranted under the Act, the court must then "give primary consideration to the developmental, physical and emotional needs and welfare of the child."

The Court has done this and finds the same considerations apply that have already been discussed extensively in this opinion. Furthermore, the Court applies the same reasoning for concluding that these needs will be served by the termination of Father's parental rights.

## VII. ADDITIONAL CONSIDERATIONS UNDER 23 PA.C.S.A. SECTION 2511(b) FOR FATHER

### A. ENVIRONMENTAL FACTORS

Title 23 Pa. C.S.A. Section 2511(b) specifies that a court may not terminate parental rights "solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing, and medical care if found to be beyond the control of the parent."

As "environmental factors beyond the control of Father" was not the linchpin in the placement of the minor child and because of the presence of other, independent factors utilized in the placement of L.S.D.R.-C., this consideration does not apply and will not be addressed.

### B. NEEDS AND WELFARE OF THE CHILD

Once the Court has found that involuntary termination of parental rights is warranted under the Act, the court must then "give primary consideration to the developmental, physical and emotional needs and welfare of the child." This is to

18

be a separate inquiry and even where the court has already considered the needs and the welfare of the child under one of the grounds of termination, the court must do so again. *In re Matsock*, 611 A.2d 738 (Pa. Super. 1992).

The Court has done this and finds the same considerations apply that have already been discussed extensively in this opinion. Furthermore, the Court applies the same reasoning for concluding that these needs will be served by the termination of Father's parental rights.

## VIII. <u>CONCLUSION</u>

This court finds that Father was given ample time to complete the required services of mental health treatment, drug and alcohol services and parenting education, but has failed to successfully do so. The Court finds that Father is not able to meet the child's needs. Father cannot meet the child's basic physical, developmental and emotional needs. Father has been given ample time to address and remedy his issue but was unable to do so. The Court finds that Father is not able to meet his child's needs. In stark contrast, the foster parents have amply demonstrated that they meet the physical, developmental, emotional needs of the minor child, L.S.D.R.-C., and she has thrived under their care. The child needs consistency, safety and stability and deserves a permanent home with capable parents. The only way to provide this is to terminate the rights of the

Father.  Clearly, it is in the child's best interest to do so.

Respectfully submitted,

BY THE COURT,

JENNIFER L. ROGERS                    J.

DATE: 3/28/23

COPIES TO:

Christopher Harrison, Esquire
Children & Youth Services
of Luzerne County
111 North Pennsylvania Boulevard
Wilkes-Barre, PA 18701

Thomas W. Sharkey, Esquire
Counsel for Father
982 North Sherman Court
Hazleton, PA 18201

Joseph J. Mashinski, Esquire
Guardian Ad Litem
1170 Highway 315, Suite 1
Plains, PA 18702