J-S25016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: R.J., MOTHER | : | |
| | : | |
| | : | No. 526 EDA 2023 |

Appeal from the Order Entered February 1, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-DP-0000738-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: N.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: R.J., MOTHER | : | |
| | : | |
| | : | No. 527 EDA 2023 |

Appeal from the Decree Entered February 1, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-AP-0000626-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: N.J.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: R.J., MOTHER | : | |
| | : | |
| | : | No. 528 EDA 2023 |

Appeal from the Order Entered February 1, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-DP-0000739-2020

| IN THE INTEREST OF: N.J.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.J., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 529 EDA 2023 |

Appeal from the Decree Entered February 1, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-AP-0000627-2022

BEFORE:  NICHOLS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED AUGUST 21, 2023**

R.J. (Mother) appeals from the decrees terminating her parental rights to her two daughters, N.J. and N.J.J. (Children), and from the orders changing Children's permanency goals to adoption.[1]  We affirm.

N.J. was born in May 2008 and N.J.J. was born in July 2015.  The Philadelphia Department of Human Services (DHS) obtained protective custody of Children in July 2020, after learning Children, then ages 12 and 5, "were residing in a public park alone, without adult supervision."  N.T., 2/1/23, at 6.  Mother concedes Children "were unsupervised and unkempt from 8:00 a.m. to 7:00 or 8:00 p.m."  Mother's Brief at 4.  Mother agreed to Children's

_____

[1] Mother "is the sole appellant … as neither Father nor Unknown Putative Father have filed an appeal to date."  Trial Court's Notice of Compliance with Rule of Appellate Procedure 1925(a), 4/3/23, at 1 n.1.

- 2 -

placement in foster care while Mother "worked to secure adequate housing."

*Id.*

Children were adjudicated dependent on August 19, 2020.  DHS, with the Community Umbrella Agency (CUA), implemented a parenting plan for Mother.  The trial court ordered Mother to maintain contact with CUA, obtain suitable housing, visit Children, participate in random drug screens, complete parenting classes, and be evaluated for mental health and substance abuse services.

Mother failed to comply with her housing and visitation objectives.  More than two years later, in November 2022, DHS petitioned to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). The trial court held a hearing on February 1, 2023.  That same day, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b), and changed Children's permanency goal to adoption.

Mother timely filed a notice of appeal at each child's dependency and adoption docket, as well as a concise statement of errors complained of on appeal.  In response, the trial court stated it had placed "on the record the reasons for … terminating parental rights and changing [C]hild[ren]'s permanency goal to adoption[.]"  Trial Court's Notice of Compliance with Rule of Appellate Procedure 1925(a), 4/3/23, at 1 (stating the "attached February 1, 2023 transcript details the testimony and evidence that led to the trial

court's final determination and is identified as Court's Exhibit A. (N.T. 2/1/23, pgs. 1-115 (Court's Exhibit A)"). The trial court noted that "Mother's visits were reverted from community to supervised because of safety risks present when Mother had [C]hildren in the community;" Mother had not "obtained adequate housing despite having ample resources to do so;" and "it ha[d] been 29 months since adjudication and Mother has not demonstrated an ability to remedy the situation which led to the adjudication of [C]hildren." *Id.* at 2 (citations to notes of testimony omitted). The trial court further observed "there was no evidence to support a parent-child bond," because Children "do not look to Mother to support their needs." *Id.* The trial court concluded termination "would best serve the needs and welfare of [C]hildren." *Id.* On April 14, 2023, this Court consolidated the appeals *sua sponte*.

Mother presents four issues:

A. Whether the [t]rial [c]ourt erred in terminating the parental rights of [Mother]?

B. Whether the [c]ourt erred in changing the goal to adoption?

C. Whether the [c]ourt erred in terminating [M]other's parental rights by granting [DHS's] [p]etition to [t]erminate Mother's [p]arental [r]ights when it did not meet its burden by clear and convincing evidence of showing that the best interest of [C]hildren is adoption pursuant to section 2511(b) of the Adoption Act?

D. Whether the errors committed by the [c]ourt below deprived [Mother] of her rights to due process and equal protection under the law?

Mother's Brief at 3.

- 4 -

Mother has abandoned her second and fourth issues. *See* Mother's Brief at 9-15 (failing to develop claims that the trial court erred in changing Children's goal to adoption, and violated Mother's constitutional rights to due process and equal protection). This Court has held that any issue "identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived." *See Int. of D.N.G.*, 230 A.3d 361, 363 n.2 (Pa. Super. 2020) (citation omitted). Accordingly, Mother has waived her second and fourth issues.[2]

Mother's remaining first and third issues pertain to termination of her parental rights pursuant to 23 Pa.C.S.A. § 2511(a) and (b). We review the termination of parental rights for an abuse of discretion. *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012).

> [O]ur standard of review requires [us to] accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> As [the Supreme Court] discussed in *In re: R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)], there are clear reasons for applying an abuse of discretion standard of review …. [U]nlike trial courts, appellate

---

[2] As Mother has abandoned her issue regarding Children's goal change, we affirm the orders at CP-51-DP-0000739-2020 and CP-51-DP-0000738-2020 without further discussion. *See Int. of D.N.G.*, 230 A.3d at 363 n.2.

courts are not equipped to make fact-specific determinations on a cold record, where trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead, we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*Adoption of S.P.*, 47 A.3d at 826-27 (some citations omitted). The petitioner has the burden to provide clear and convincing evidence that its asserted grounds for termination are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Preliminarily, Mother claims she is "unsure of the trial court's position" because it declined to file an opinion in response to Mother's concise statement. Mother's Brief at 8. Mother assails the trial court's "broad reference to the record" in its Notice of Compliance with Rule of Appellate Procedure 1925(a). *Id.* She further asserts she "should not have to guess the reason for the trial court's ruling," and suggests this Court remand this case to the trial court to file an opinion. *Id.* This claim lacks merit.

The trial court was not required to file an opinion. The trial court stated it had placed "on the record the reasons" for terminating Mother's parental rights. Trial Court's Notice of Compliance with Rule of Appellate Procedure 1925(a), 4/3/23, at 1. Rule of Appellate Procedure 1925 provides:

(2) *Children's fast track appeals.* In a children's fast track appeal:

(i) The concise statement of errors complained of on appeal shall be filed and served with the notice of appeal.

(ii) Upon receipt of the notice of appeal and the concise statement of errors complained of on appeal required by Pa.R.A.P. 905(a)(2), the judge who entered the order giving rise to the notice of appeal, **if the reasons for the order do not already appear of record**, shall within 30 days file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, which may, but need not, refer to the transcript of the proceedings.

Pa.R.A.P. 1925(a)(2) (bold emphasis added). "Rule 1925 does not require a trial judge to issue an opinion in all cases. Instead, a statement is only necessary where the reasons for the order do not already appear of record." *Liles v. Balmer*, 653 A.2d 1237, 1244 (Pa. Super. 1994). Upon review, we agree with the trial court that its reasons for terminating Mother's parental rights appear in the transcript from the termination hearing. We thus address Mother's substantive issues.

I.    Section 2511(a) – Grounds for Termination

Mother argues the trial court erred in terminating her parental rights under Subsections 2511(a)(1), (2), (5), and (8). We need only agree with the trial court as to any one Subsection of Section 2511(a), as well as Subsection (b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Instantly, we examine Mother's challenge under Subsection 2511(a)(2). Subsection 2511(a)(2) provides for termination when:

> The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

The petitioner must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021) (citation omitted). Grounds for termination "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id.* (emphasis added).

Mother claims DHS did not present clear and convincing evidence to support termination under Section 2511(a)(1), (2), (5), and (8). Mother's Brief at 7. However, Mother fails to divide her argument into "as many parts as there are questions to be argued; and [indicate] at the head of each part— in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." *See* Pa.R.A.P. 2119(a). Mother references Subsection (a)(1), but does not discuss Subsections (a)(2), (5) or (8). *See* Mother's Brief at 9-14. Nonetheless, Mother argues the evidence does not support termination because Mother has been "consistently employed," continued to

visit Children, completed parenting classes, was determined not to "need treatment to address substance abuse issues," and leased a house (although "there were issues regarding the landlord's title"). *Id.* at 11-12.

DHS counters that the evidence supports termination under Subsection (a)(2) based primarily on Mother's failure to obtain suitable housing. According to DHS:

> Children entered care because Mother left them outside in a park all day for many days at a time, without food or drink. N.T. pp. 6:19-7:3. The Children were not allowed to be in maternal grandmother's home, where Mother worked as a home health aide. *Id.* at p. 7:6-9. The Children had to stay outside so they would not be seen by maternal grandmother's case manager[,] who could visit. *Id.* **Mother had no appropriate place for the Children in 2020, and she has no appropriate place for them now**. Mother still lives with maternal grandmother. *Id.* at p. 80:16-22. She had an interview for the Rapid Re-Housing Program but declined it because she had made plans to move to New Jersey instead. *Id.* at p. 30:23-31:14. [Mother] never moved to New Jersey. *Id.* DHS offered her first and last month's rent. *Id.* at p. 31:15-17. She did not take advantage of it. *Id.* Mother claims that DHS should have made more aggressive efforts to help her find housing, **see** Appellant Br. p. 13, but Mother did not take advantage of the multiple programs that were offered to her.

DHS's Brief at 25.

Upon review, we agree. CUA case manager, Erica Butler, testified to working with the family for "the life of the case." N.T., 2/1/23, at 6. She stated that Mother's objectives from the beginning included obtaining appropriate housing and visiting Children (as well as completing parenting classes, random drug screens, and a behavioral health evaluation/treatment).

*Id.* at 12. Although Mother has maintained employment and completed parenting classes, Ms. Butler described Mother's "overall compliance" as "minimal." *Id.* at 36, 50.

Ms. Butler confirmed that Mother's substance abuse assessment resulted in "a recommendation of no treatment needed." *Id.* at 26. However, Ms. Butler also stated that Mother had admitted to her that she smokes marijuana, and Ms. Butler had concerns about Mother using other substances based on "some insights" from Children. *Id.* at 26-27.

Regarding visitation, Ms. Butler testified that Mother obtained "expanded" unsupervised visitation "in the community." *Id.* at 13. Yet in July 2022, the court ordered that Mother's visitation "revert[] back to supervised at the agency because of concerns" about "what was occurring during those visits." *Id.* at 13-14, 16 (Ms. Butler stating N.J.J. was "running away" during visits, and N.J. "reported she observed [Mother] grab her by the arm really hard"). Ms. Butler also stated, "there were a lot of consecutive visits [Mother] missed or [] were no-shows or cancelations." *Id.* at 14.

Ms. Butler further testified about Mother's lack of suitable housing for Children. *Id.* at 30. When Children came into DHS's care in the summer of 2020, Mother lived with her mother, "in a home under Pathways, and the home wouldn't allow [C]hildren to reside there."[3] *Id.* at 7. Mother has never

_____

[3] The record does not contain details about "Pathways."

- 10 -

provided a copy of any lease, or obtained "an appropriate place of residence to reunify with Children." *Id.* Ms. Butler testified that DHS provided Mother with at least five referrals for housing. *Id.* at 30-31; 56-57. She explained that Mother provided one option for assessment, but subsequently indicated she "no longer lived there because she was unable to get the utilities in her name." *Id.* at 70. Ms. Butler added that Mother "was renting a room in the house … with other occupants, so that wouldn't be a reunification resource … with only one bedroom for [C]hildren and [Mother]." *Id.* According to Ms. Butler, housing was critical "because [C]hildren would have nowhere to live. They would be homeless." *Id.* at 31-32. Ms. Butler opined that Children could not be safely returned to Mother. *Id.* at 36.

Another CUA case manager, Tariyah Jenkins, testified that she visited Children's respective pre-adoptive foster homes. *Id.* at 74. Ms. Jenkins observed that Children were safe, and the foster families were meeting Children's needs. *Id.* Ms. Jenkins also interacted with Mother, who provided a lease to a home which Ms. Jenkins "walked through." *Id.* at 76. When asked whether the house was appropriate, Ms. Jenkins replied, "It still needed a lot of construction done to it … but the room was clean." *Id.* Ms. Jenkins stated that she told Mother to contact her when the house was completed, and Mother indicated "[s]he would, but she didn't." *Id.* at 77.

Mother testified at the time of the hearing that she had lived in the same home for "eight, nine months," although DHS had not visited. *Id.* at 79.

Mother clarified the home was a one-bedroom apartment she shared with her mother. *Id.* at 80 (Mother explaining she was unable to move into the home Ms. Jenkins visited because she "could not get the utilities switched over."). Mother conceded she did not have a "current place of residence" where "Children can be reunified" with her. *Id.* at 92.

Mother also testified she had been diagnosed with PTSD and depression, but was not "actively engaged" with a mental health care provider. *Id.* at 95. She stated she was not "actively using marijuana," but was "going to get [her] medical card." *Id.*

At the conclusion of evidence, the trial court observed, "This is an unfortunate situation, but [DHS] has met their burden by clear and convincing evidence through testimony of credible witnesses …." *Id.* at 104. The trial court stated:

> This case has been opened since the adjudication in August of 2020, for 29 months. The issue that resulted in [C]hildren coming into care is the same issue we still have today, and [M]other unfortunately has not been unable to make progress, and is not, today, in any position to be reunited with these [C]hildren.
>
> … And [M]other's own testimony is that she is not ready and does not have an available place in which to be reunited with her [C]hildren today.

N.T., 2/1/23, at 105.

The trial court addressed Subsections 2511(a)(1), (2), (5) and (8). *Id.* at 105-09. Regarding Subsection 2511(a)(2), the court concluded:

- 12 -

> [Mother] has not demonstrated an ability to remedy the situation which led [C]hildren coming into care, as housing has been – for a large part of this case, since the spring of last year, was the sole objective and [Mother] has not advanced towards having an appropriate location to be reunified with [C]hildren.
>
> She hasn't demonstrated an ability to provide [C]hildren with basic needs that [C]hildren are lacking, which is shelter, and she's not been able to demonstrate an ability to remedy that situation.
>
> [Mother] has had ample time. [Mother] has had ample resources referred to her. … [Mother] has had ample opportunity throughout the life of this case to change the situation which led to [C]hildren coming into care, but has not done so.

*Id.* at 106-07.

The record supports the trial court's conclusion that Mother's repeated and continued incapacity has caused Children to be without essential parental care that cannot or will not be remedied, as provided in Subsection 2511(a)(2). Consequently, Mother's first issue regarding grounds for termination does not merit relief.

## II.     Section 2511(b) – Needs and Welfare

We next address Mother's challenge to termination under Section 2511(b). If the court determines termination is warranted under Subsection 2511(a), it must then consider Children's needs and welfare:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. …

23 Pa.C.S.A. § 2511(b).

This Court has stated repeatedly that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). The trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). The court "should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011).

However,

> in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, **the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case**.
>
> Importantly, **the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship**.

*In re A.H.*, 247 A.3d at 444–45 (citations omitted, emphasis added).

Mother argues termination is not in Children's best interests because it "would permanently sever and destroy [Children's] bond and relationship with [M]other." Mother's Brief at 14. Mother claims the trial court "did not give primary consideration to the developmental, physical and emotional needs of [C]hildren." *Id.*

- 14 -

Conversely, DHS asserts that termination is in Children's best interests because "Mother does not have parent-child bond" with Children. DHS's Brief at 29. DHS claims Children are bonded with their pre-adoptive foster families "and want to be adopted by the foster parents." *Id.* According to DHS, termination "would best serve the Children's needs and welfare by helping them achieve safety, reliability and permanency." *Id.* at 30.

Again, the record comports with DHS's argument. The CUA caseworker, Ms. Butler, opined that based on her observations, Mother and Children do not have a parent-child relationship. *Id.* at 22, *see also id.* at 37. Ms. Butler testified:

> The children [are] really bonded with their foster mom, and they look to the foster mom as more of the parent []. I think they love [M]other and are excited for visits, but I also think they haven't … established the same type of bond that they have with their foster parent.

*Id.* Ms. Butler repeated, "I don't believe there's a parent-child bond for the children." *Id.* at 72.

Ms. Butler further testified that Children would not experience "irreparable harm" if Mother's parental rights were terminated. *Id.* at 36. According to Ms. Butler, neither child wanted to reunify with Mother. *Id.* She stated that N.J. is "doing really well" in her pre-adoptive kinship placement. *Id.* at 39-40. Ms. Butler opined that adoption was in N.J.'s best interests, in part "because [N.J.] is asking [DHS] to remain where she is." *Id.* at 41. Likewise, Ms. Butler stated that N.J.J. is in a pre-adoptive placement, where

she is "very bonded" with her pre-adoptive foster mother. *Id.* at 43. Ms. Butler testified that N.J.J. indicated that she wants to be adopted, and Ms. Butler opined that adoption was in N.J.J.'s best interest. *Id.* at 44.

Mother testified in opposition to termination, describing her relationship with N.J. as "rocky" and "kind of strained," and stating that she has "a good relationship" with N.J.J. *Id.* at 89. Mother did not know where N.J. attended school, and stated that N.J.J. "was going to Belmont." *Id.* at 96. Mother testified, "I have a bond with all my kids." *Id.* at 90. She explained, "they're my kids and I love them. I want the best for them." *Id.* at 91. She added that "people go through hard times, people struggle, but I'm not a bad mom and I do the best I can, being that I do it myself, with no help." *Id.*

The record refutes Mother's claim that the trial court did not consider her bond with Children, and termination is contrary to Children's needs and welfare. After hearing the evidence, the trial court concluded, "With regard to 2511(b), [DHS] has met its burden as well[.]" N.T., 2/1/23, at 109. The trial court reasoned:

> While [Mother] does love [C]hildren – the [c]ourt does not doubt that – there is not a parent-child bond because [C]hildren do not look to [Mother] to meet their daily needs that children look to parents to [meet].
>
> So while [Mother] has a relationship with [C]hildren that this [c]ourt does not question, it is not a parent-child relationship, as [Mother] is not providing for [C]hildren in the fashion that parents provide for children. They do not look to [Mother] for any emotional support or any stability or to meet any of their daily needs.

- 16 -

… [C]hildren would not suffer irreparable harm as a result of termination of parental rights, as [Mother] has not been consistently visiting with [C]hildren, [who] don't want to visit with [Mother.]

[Mother] is someone [Children] may enjoy visits with, who are also very disappointed when [Mother] doesn't appear on time for the visits and they need to be canceled, but that does not establish a parent-child relationship in this case.

The fact [Mother] has love for [C]hildren does not create the parent-child relationship, and the fact that there may be some bond and [C]hildren know [M]other … does not make it a parent-child bond.

[DHS] has met its burden by clear and convincing evidence under 2511(b).

*Id.* at 109-11.

Our review reveals no abuse of discretion or error in the trial court's consideration of the evidence and application of the law in finding that termination was in Children's best interests and warranted under Section 2511(b). Thus, Mother's third issue does not merit relief.

For the above reasons, we affirm the decrees terminating Mother's parental rights and the orders changing Children's permanency goal to adoption.

Decrees affirmed. Orders affirmed.

Judge McCaffery joins the memorandum.

Judge Nichols concurs in the result.

- 17 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/21/2023</u>