J-S34034-21

2022 PA Super 7

| | | |
|---|---|---|
| IN RE: M.N.K., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.J.K., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 929 MDA 2021 |

Appeal from the Decree Entered June 16, 2021
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s): 818-2021

BEFORE: DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

OPINION BY McCAFFERY, J.: **FILED JANUARY 06, 2022**

R.J.K. (Father) appeals from the decree entered on June 16, 2021, in the Lancaster County Court of Common Pleas, Orphans' Court Division, involuntarily terminating his parental rights to his daughter, M.N.K. (Child), born in December of 2006. Father now argues the orphans' court erred by finding that the respective county's Children and Youth Social Service Agency (CYS) provided Father with proper legal notice of the underlying termination of parental rights (TPR) proceeding pursuant to 23 Pa.C.S. § 2513 and Pennsylvania Orphans' Court Rule 15.6. After careful review, we affirm.

Based on the nature of Father's claim, the underlying facts that led to Child's removal from Father's care are not pertinent to this appeal and we need not recite them in detail herein. CYS has been involved with the family since 2009. For much of Child's life, Father has resided in Ohio. In November

2018, the court adjudicated Child, who was 12 years old at the time, dependent pursuant to 42 Pa.C.S. § 6302(1), and later approved a permanency plan setting forth the reasons for placement and the objectives the parents had to achieve for Child to be returned to parents' care. Subsequently, on March 29, 2021, CYS filed a petition for involuntary termination of Father's parental rights in accordance with 23 Pa.C.S. § 2511(a)(1), (2) and (b).[1] CYS alleged that Father failed to complete the permanency plan, and termination would best serve the needs and welfare of Child. **See** Petition to Terminate Parental Rights of Parents, 3/29/2021, at 2-3.

Based on the petition, the orphans' court scheduled a TPR hearing for June 2021. In the meantime, a permanency review hearing was held on April 26, 2021, during which Father was present by video conference. The date of the TPR hearing was stated twice during the permanency review video conference. The court subsequently held the TPR hearing on June 14, 2021. Father was not present, but his counsel at the time did appear at the proceeding. **See** N.T., 6/14/21, at 3. Father's absence was discussed at

---

[1] CYS also filed a petition to involuntarily terminate the parental rights of Child's mother (Mother). Like Father, the court terminated Mother's rights to Child. Mother is not a party of this appeal. Moreover, Mother's counsel sent a letter to this Court, indicating that Mother agreed with the decision of the orphans' court and did not intend to file a brief in support of the appeal. **See** Letter from Caprice Hicks Bunting, Esquire, to Superior Court of Pennsylvania, 10/15/2021.

- 2 -

length, as well as what type of notice was provided to him. *Id.* at 4-6, 14-16. Father's counsel also tried to contact him during the proceeding. *See id.* At the conclusion of the hearing, the court indicated it wanted to review the transcript from the April 26, 2021, permanency review hearing to confirm Father was given proper notice. *See id.* at 16, 36. Two days later, the court entered a decree, terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2) and (b). This timely appeal followed.[2]

Father raises the following issue on appeal.

1. Whether the Orphans' Court erred in its Decree dated June 16, 2021 that [CYS] had met its burden in proving that [F]ather's parental rights should be terminated when the Court erred as a matter of law when it concluded that [F]ather had been adequately served with the petition for involuntary termination under Pa.O.C.R. 15.6 and/or The Adoption Act under Section 2513(a)-(b), thus violating his right to due process.

Appellant's Brief at 11.[3]

Initially we note that while the issue in his statement of question involved concerns the matter of whether he had been adequately served with the petition, his argument addresses whether he was properly served notice of the TPR hearing. As such, we confine our analysis to the issue addressing

---

[2] Concomitant with his notice of appeal, Father filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) (requiring appellant to attach concise statement to notice of appeal in family fast track appeals).

[3] Notably, Father did not raise a claim regarding the court's termination of Father's parental rights pursuant to Sections 2511(a)(1), (2) and (b).

the TPR hearing notice. Any argument concerning the petition will be deemed abandoned, and consequently waived, for purposes of appellate review. ***See Interest of D.N.G.***, 230 A.3d 361, 363 n.2 (Pa. Super. 2020).

Father's claim "presents a question of law requiring us to interpret the notice requirements of the Adoption Act and our Rules of Orphan Court Procedure. Thus, our standard of review is d*e novo* and our scope of review is plenary." ***In re Adoption of K.M.D.***, ___ A.3d ___, 2021 WL 3671701, *3 (Pa. Super. Aug. 19, 2021) (citation omitted).

The "termination of parental rights implicates a parent's Fourteenth Amendment right to due process." ***In Interest of A.N.P.***, 155 A.3d 55, 66 (Pa. Super. 2017) (citations omitted). "Due process requires . . . adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." ***Id.*** (citation and some punctuation omitted). Although "[d]ue process is flexible and calls for such procedural protections as the situation demands[,]" this Court is "unwilling to allow the termination of parental rights . . . without strict compliance with the procedures set forth by the Legislature[.]" ***Id.***, at 66, 68 (citations and some punctuation omitted). "As in all civil cases, the petitioner . . . bears the burden to prove proper service by its affirmative acts." ***In re K.B.***, 763 A.2d 436, 439 (Pa. Super. 2000) (citation omitted).

Section 2513 of the Adoption Act addresses the hearing notice requirement in matters concerning the involuntary termination of parental rights:

> **(a) Time**.--The court shall fix a time for hearing on a petition filed under section 2512 (relating to petition for involuntary termination) which shall be not less than ten days after filing of the petition.
>
> **(b) Notice**.--At least ten days' notice shall be given to the parent or parents . . . whose rights are to be terminated, by personal service or by registered mail to his or their last known address or by such other means as the court may require.

23 Pa.C.S. § 2513(a)-(b).

Moreover, Pennsylvania Orphans' Court Rule 15.6 provides, in pertinent part:

> (a) Notice to every person to be notified shall be by personal service, service at his or her residence on an adult member of the household, or by registered or certified mail to his or her last known address.

Pa.O.C. Rule 15.6(a).

Here, the trial court described the background relevant to the notice of the TPR hearing as follows:

> Notice of hearings in the Juvenile Court dependency action for the Child have been sent to Father at 7519 Dorr Street,[4] in

---

[4] Both the court and CYS reference Father's address as 7519 Dorr Street. In Father's brief, he points to a statement at the TPR hearing where a witness testified that his address was at 7519 George Street. *See* Father's Brief at 17; *see* N.T., 6/14/2021, at 19, 23. We find the "George Street" reference at the hearing is either a misunderstanding or a scrivener's error as the record demonstrates Father's address was at Dorr Street. ***See i.e.***, Petition to

*(Footnote Continued Next Page)*

Toledo, Ohio, for all hearings in the dependency action since December 2019, when notice was mailed for a permanency review hearing to be held in January 2020. Father was present in person for the January 3, 2020, permanency review hearing, and by telephone or video call for the four hearings held since then (three permanency reviews and one placement modification hearing). The [CYS] caseworker testified at the April 26, 2021, permanency review hearing that she had spoken with Father in March 2021, but he had refused to provide updates. In the permanency review order issued on April 26, 2021, the court found that Father "refuses to provide updates to the caseworker." During the April 26, 2021, permanency review hearing, Father stated that he had a residence in which he had been living for approximately two years. Father did not indicate any change of address.

During the permanency review hearing on April 26, 2021, the [CYS] caseworker stated during her testimony that the TPR hearing was scheduled for June 14, 2021. Father was present virtually at the permanency review hearing through the video conferencing application Lifesize. Additionally, the [c]ourt instructed Father during the permanency review hearing that he needed to be physically present at the TRP hearing on June 14, 2021, at 9:00 a.m.

[CYS] sent notice of the June 14, 2021, TPR hearing to Father at the address at which he had been receiving his mail, and [CYS] received a receipt showing that the mail was delivered to Father's address of record. Notice was sent by certified mail, the receipt for which indicated that it had been delivered on May 14, 2021, and left with an individual at Father's home address. The court heard on June 14, 2021, that Father had not been in contact with [CYS] or with his court-appointed counsel since April 2021. Father did not notify [CYS] or his attorney of any change in his address.

Orphans' Ct. Op., 8/10/21, at 2-3.

_____

Terminate Parental Rights of Parents, 3/29/2021, at 2; TPR Exhibit 3, Letter from Sue Hickey to Lancaster County Children and Youth Social Services Agency, 11/16/2020.

As noted above, Father complains that he did not receive adequate notice of the TPR hearing. *See* Father's Brief at 15. First, he states that even though the date of the TPR hearing was mentioned twice at the April 26th permanency review hearing, "this did not meet the required notice standard nor the contents and instructions of the notice required for the seriousness of a TPR hearing." *Id.* Father maintains that although the date and time were mentioned at the permanency review hearing and "could possibly be construed as actual notice," it is irrelevant because a parent's "actual knowledge of the hearing does not remedy defective service noticing the hearing and making a parent aware of the hearing is not the same as affording the parent the necessary information mandated by the law – to defend in such a hearing." *Id.* at 18-19.

Second, he contends that the circumstances surrounding the delivery of the notification that was sent by certified mail were lacking since "it was not signed by a receiving individual, [but] merely a handwritten assertion by the [United States Postal Service] worker that it was delivered." Father's Brief at 16. He states that "without a signature, the letter could have been tracked to the address, or placed at the address, almost like a first class letter, without actual delivery of the certified letter to an adult individual residing at the

address." *Id.* Moreover, he alleges an assumption "that someone at that address did receive the certified letter" should not be deemed sufficient. [5] *Id.*

Father concludes that the "first method of service contemplated by the rule and statute is personal service[,]" and here, there was no evidence that CYS "attempted to engage the services of anyone to personally serve the notice to [F]ather in Ohio." Father's Brief at 19. Father then states the next method of service is "service at his residence on an adult member of the household[,]" and here, "there is no signature identifying who, if anyone, received the certified mail, let alone actual service to anyone in the household." *Id.* (emphasis omitted).

The orphans' court maintains notice of the TPR hearing was properly served on Father in accordance with Section 2513(b) and Orphans' Court Rule 15.6 based on the following:

> Notice of the June 14, 2021, TPR hearing was sent by certified mail to the Dorr Street address, which was where notices for the previous six hearings in the dependency action had been sent. The Agency received a return receipt card indicating that the notice had been delivered to that address. Father had the contact information to reach out to the Agency caseworker or to his attorney to let them know if he changed addresses, but he failed to do so. Because the Dorr Street address was Father's last known address, notice was properly sent in accordance with the requirements of [Section] 2513. In addition, Father was informed of the TPR hearing date when he was present through video

---

[5] Father also states: "It is not contested that the caseworker never received anything by mail from [him], nor anything confirming his present address, landlord or lease. [Father] also did not provide any updates concerning any addresses he might have to his caseworker[.]" *Id.* at 17 (citations omitted).

conference at the permanency review hearing on April 26, 2021, when [the orphans' court] instructed Father specifically that he would need to be present in person for the TPR hearing on June 14, 2021, at 9:00 a.m.

Orphans' Ct. Op. at 4.

We discern no error of law or abuse of discretion in the orphans' court's analysis. First, the record supports the court's determination. At the TPR hearing, Counsel for CYS established that notice had been sent by certified mail:

> We have a green card returned, Your Honor, that indicates that it was delivered, which was handwritten by the postal service worker. But we have a tracking history also indicating that it was delivered and left with an individual on May 14th. Obviously, a month ago at this point and the time it had been delivered.
>
> * * *
>
> We attempted to serve him at this address. I have no idea with [the COVID-19 pandemic] why it didn't even get -- whether somebody refused to sign it or how it was delivered, but I am satisfied with the tracking history indicating that it was left with an individual. Somebody who was an adult would have received it.
>
> And since [Father] has not provided [CYS] with a new address and has failed to communicate, I am assuming he is, at this point, no longer interested in participating in this proceeding.

N.T., 6/14/21, at 4-5. Moreover, it merits mention that counsel for Father was present at the hearing. He could not explain his client's absence, nor could he get in contact with his client. Nevertheless, counsel did not ask for a continuance based on a lack of notice or Father's failure to appear.

- 9 -

Second, we observe Father does not argue that he never received notice of the TPR hearing *via* certified mail; rather, he asserts that the circumstances surrounding the delivery were insufficient to demonstrate he actually received service because the USPS employee handwrote on the green verification card that the document was delivered and not an adult individual residing at the home. Without more, we conclude the court was permitted to find that notice of the TPR hearing was properly sent in accordance with the requirements of Section 2513 and Orphans' Court Rule 15.6. Furthermore, the fact that Father was informed of the TPR hearing date **twice** at the April 26, 2021, permanency review hearing supports the court's conclusion that he was on notice about the hearing. Therefore, Father has not established that his due process rights were violated.

Lastly, we note Father cites to **Adoption of K.M.D.**, **supra**, in his brief. **See** Father's Brief at 19. We note that case is distinguishable from the present matter. In **K.M.D.**, the court held a termination hearing via videoconference and the parents were not in attendance. **Adoption of K.M.D.**, 2021 WL 3671701, *2. The parents' address was known by the agency, and the agency admitted that neither personal service or service by certified mail were accomplished or even attempted. **See id.** at 4. Instead, the agency had sent notification of the TPR hearing *via* email based on its interpretation of the Pennsylvania Supreme Court's and local common pleas court's emergency orders issued during the COVID-19 pandemic, which authorized the use of

"advanced communication technologies." *Id.* at *6. There was also evidence that the parents had actual knowledge of the TPR hearing because the mother-appellant texted her caseworker immediately prior to the hearing to say that she and father-appellant would not be attending due to internet issues and because of dissatisfaction with their attorneys. *See id.* at *4. Therefore, the question on appeal was "whether the [a]gency effectuated proper service *via* email, or in the alternative, whether the Parents' actual knowledge of the proceedings excuses the otherwise defective service." *Id.*

A panel of this Court concluded the statewide and local emergency orders "primarily referenced 'advanced communication technologies' as means to hold remote hearings, conferences, and the like." *Adoption of K.M.D.*, 2021 WL 3671701, *6. The panel opined that "insofar as the judicial emergency orders even pertained to [a]gency business, the [a]gency's use of email was still subject to constitutional constraints," and the agency was required to make a good faith effort to properly serve notice to the parents. *Id.* The panel further determined:

> [T]he [a]gency's email to the Parents constituted defective service, where the [a]gency did not attempt service under Pa.O.C. Rule 15.6(a) and Section 2513(b) of the Adoption Act. Neither the judicial emergency orders, nor [p]arents' actual knowledge of the hearing, negates the [a]gency's circumvention of these procedures. Consequently, without proper service, the [p]arents' rights to due process were violated.

*Id.* at *7.

Here, contrary to **_Adoption of K.M.D._**, CYS did attempt — and successfully effectuated — service on Father _via_ certified mail. Accordingly, we affirm the court's decree involuntarily terminating Father's parental rights to Child.

Decree affirmed.

Judge Dubow joins the Opinion.

Judge McLaughlin Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/06/2022