J-S04014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.-M.O.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: O.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2275 EDA 2024 |

Appeal from the Decree Entered August 27, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000040-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: K.B.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: O.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2276 EDA 2024 |

Appeal from the Decree Entered August 27, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000041-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: K.G.-K.-Y.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: O.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2277 EDA 2024 |

Appeal from the Decree Entered August 27, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000042-2024

| IN THE INTEREST OF: K.H.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: O.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2278 EDA 2024 |

Appeal from the Decree Entered August 27, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000043-2024

BEFORE:  OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 15, 2025**

O.S. ("Mother") appeals from the decrees entered August 27, 2024, which granted the petitions of the Philadelphia Department of Human Services ("DHS") and involuntarily terminated her parental rights to her four daughters:  K.-M.O.L. a/k/a K.M.-L. (born in March of 2012), K.G.-K.-Y.S. (born in October of 2013), K.H.S. (born in July of 2015), and K.B.S. (born in February of 2020) (collectively, "the Children").[1, 2]  We vacate the decrees and remand for further proceedings consistent with this memorandum.

_____

[1] Pursuant to separate orders entered the same date, the court additionally changed the Children's permanency goals from reunification to adoption. Mother did not appeal these orders.

[2] The court involuntarily terminated the parental rights of J.S., the father of K.-M.O.L., pursuant to a separate decree, which was entered on the same date.  J.S. appealed the termination decree and the contemporaneous goal
*(Footnote Continued Next Page)*

Given the nature of our disposition, we need not detail the full factual and procedural history of this appeal. Briefly, DHS obtained protective custody of K.-M.O.L., K.G.-K.-Y.S., and K.H.S. in September 2021, after Mother abandoned them and traveled to South Carolina. DHS obtained protective custody of K.B.S. the following month, in October 2021, after Mother similarly abandoned her upon returning to Pennsylvania. *See* N.T., 8/27/24 (Volume 1), at 17, 101-102; *see also* Trial Court Opinion, 10/31/24, at 5-8. On November 23, 2021, the trial court adjudicated the Children dependent. *See id.* at 22. After initial placement in kinship care, K.-M.O.L., K.G.-K.-Y.S., and K.H.S., were transferred to foster care with V.C. in May 2022, where they remained at the time of the subject hearing. K.B.S. was placed separately in kinship care with B.O., where she remained throughout the dependency and termination proceedings. *See* DHS Exhibits 1-4; *see also* N.T., 8/27/24 (Volume 1), at 57-59, 81-82, 90-91.

_____

change order. We address his appeals by separate memorandum at Docket Nos. 2273-2274 EDA 2024.

Pursuant to separate decrees entered on the same date, the court also involuntarily terminated the parental rights of H.L. (who died on March 29, 2018), the father of K.G.-K.-Y.S. and K.H.S., , as well as those of any unknown father of the children. Neither H.L., prior to his death, or any unknown father appealed or participated in the instant appeal.

Finally, pursuant to a separate decree entered on the same date, the court also involuntarily terminated the parental rights of any unknown father as to K.B.S. No unknown father appealed or participated in the instant appeal.

On September 13, 2021, the court appointed the Defender Association of Philadelphia Child Advocacy Unit ("the Defender Association"), as counsel and guardian *ad litem* for the Children in the dependency proceedings. **See** Trial Court Order, 9/13/21. Then, on November 10, 2022, the court appointed Linda Walters, Esquire, as legal counsel for the Children. **See** Trial Court Order, 11/10/22. The Defender Association remained appointed as the Children's guardian *ad litem*.

On January 25, 2024, DHS filed petitions for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), as well as petitions for goal change from reunification to adoption. The trial court ultimately held a combined evidentiary hearing on DHS's petitions on August 27, 2024. The Children, then twelve years old, eleven years old, eight years old, and four years old, respectively, were represented by Arin Brill, Esquire, of the Defender Association and Attorney Walters.[3]

DHS presented the testimony of the Community Umbrella Agency ("CUA") case manager, Taisha Sylvester; CUA visitation coach, Alexis Townes; and the Children's foster mothers, V.C. and B.O. At the conclusion of DHS's case-in-chief, Attorney Walters provided the court a verbal "report" as to the

_____

[3] During the proceeding, Attorney Brill represented the Children's best interests and Attorney Walters represented the Children's legal or preferred interests.

Children's preferences and the court interviewed the three oldest children, *in camera*, with the participation of all counsel. ***See*** N.T., 8/27/24 (Volume 1), at 96-101. Attorney Walters conveyed that the Children were "adamant" in their desire for adoption, as confirmed by their *in camera* interviews. ***See id.*** at 97-98; N.T., 8/27/24 (Volume 2),[4] at 10-11, 16-17, 23; ***see also*** DHS Exhibits 7, 8. Attorney Brill declined to present any evidence. The court then granted Attorney Walters' request to be excused from the proceeding, without objection, as follows:

> [ATTORNEY] WALTERS: Your Honor, if I did my report, do you need me? I can stay, but I helped us [sic] superfluous then I might as well go. It's up to you.
>
> THE COURT: Do we need Ms. Walters for any reason?
>
> [COUNSEL FOR MOTHER]: I can't think of any.
>
> [ATTORNEY] BRILL: No
>
> THE COURT: All right [sic]. Thank you, Ms. Walters.
>
> [ATTORNEY] WALTERS: Thank you, Your Honor. I have a long drive. I appreciate it.
>
> ([Attorney] Walters was excused).

N.T., 8/27/24 (Volume 1), at 101. Following Attorney Walters' departure, the court proceeded with the cases-in-chief of Mother and Father and heard

---

[4] We observe that Volume 2 of the Notes of Testimony from the August 27, 2024 hearing comprises the sealed *in camera* interviews of the three oldest children, which were transcribed and included as part of the certified record.

testimony from Mother, the maternal grandmother, and J.S.,[5] as well as closing argument, prior to placing its decision on the record, all in Attorney Walters' absence. *See id.* at 101-81.

By decrees dated and entered on August 27, 2024, the trial court involuntarily terminated Mother's parental rights to the Children. On August 27, 2024, Mother filed timely notices of appeal, along with concise statements of error complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). This Court consolidated Mother's appeals *sua sponte* on September 9, 2024. The trial court filed a responsive Rule 1925(a) opinion on October 31, 2024.

On appeal, Mother raises the following issues for our review:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother[] pursuant to 23 Pa.C.S.A. Section 2511(a)(1) where Mother presented evidence that she tried to perform her parental duties?

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother[] pursuant to 23 Pa.C.S.A. Sections 2511(a)(2) where Mother presented evidence that she has worked to remedy her situation and has the present capacity to care for her children?

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother[] pursuant to 23 Pa.C.S.A. Section 2511(a)(5) where evidence was provided to establish that the children were removed from the care of their grandmother not Mother, who is capable of caring for her children?

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother[] pursuant to 23

_____

[5] J.S. testified on his own behalf in connection with DHS's petitions to terminate his parental rights and for goal change in relation to K.-M.O.L.

Pa.C.S.A. Section 2511(a)(8) where evidence was presented to show that Mother is capable of caring for her children?

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother[] pursuant to 23 Pa.C.S.A. Section 2511(b) where evidence was presented that the Children initially lived with her and she attended visits when she was able to visit with her children?

Mother's Brief at 7 (cleaned up).

Our standard of review in cases concerning the involuntary termination of parental rights "is limited to a determination of whether the decree . . . is supported by competent evidence." *Interest of M.E.*, 283 A.3d 820, 829 (Pa. Super. 2022) (internal citations and quotation marks omitted). We have further reiterated:

When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to

- 7 -

establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue.

*Id.* at 829-30 (internal citations and quotation marks omitted).

Prior to reaching the merits of Mother's appeal, we first address *sua sponte* whether the trial court appointed legal counsel to represent the Children for the contested termination proceedings pursuant to Section 2313(a). *See In re Adoption of K.M.G.*, 240 A.3d 1218, 1235 (Pa. 2020).

Section 2313 of the Adoption Act provides, in relevant part:

**(a) Child.**—The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents.  The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child.  No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A. § 2313(a).

In *Interest of H.H.N.*, 296 A.3d 1258 (Pa. Super. 2023), this Court stated:

Our Supreme Court has explained that "Section 2313(a) requires the appointment of counsel who serves the child's legal interests in contested, involuntary [termination of parental rights] proceedings." *In re Adoption of L.B.M.*, [161 A.3d 172, 180 (Pa. 2017)] (footnote omitted).  Further, the *L.B.M.* Court held that "**the failure to appoint counsel for a child involved in a contested, involuntary termination of parental rights proceeding is a structural error and is not subject to harmless error analysis**." *Id.* at 183.  **Further, the failure to appoint counsel to represent a child's legal interests pursuant to Section 2313(a) is a non-waivable error**. [*In re T.S.*, 192 A.3d 1080, 1087 (Pa. 2018)].  Subsequently, the

- 8 -

Supreme Court clarified that "trial courts are obligated by Section 2313(a) to appoint counsel to serve the critical role of a child's attorney, zealously advocating for the legal interests of the child who otherwise would be denied a voice in the [involuntary] termination of parental rights proceedings." *In re Adoption of K.M.G.*, [240 A.3d 1218, 1233-1234 (Pa. 2020)] (citation omitted). In the context of [involuntary termination of parental rights] proceedings, the child's "legal interests" is synonymous with "the child's preferred outcome[.]" *T.S.*, 192 A.3d at 1082 (footnote omitted); *see also* Pa.R.J.C.P. 1154, cmt.

*H.H.N.*, 296 A.3d at 1263-1264 (emphasis added) (some brackets and parentheses in original).

In *L.B.M.*, our Supreme Court explained:

A structural error is defined as one that affects the framework within which the trial proceeds, rather than simply an error in the trial process itself. Structural errors are not subject to harmless error analysis. Generally, denial of counsel is a structural error, although such error usually stems from deprivation of a constitutional right to counsel. Here, by contrast, [a child's right to legal counsel in the context of termination proceedings] is statutory. Nonetheless, we do not find that distinction to be determinative. The same concerns are evident regardless of the derivation of the right. Whether the right to counsel is conferred by constitution or statute, the right having been conferred must be protected.

In criminal and [involuntary termination of parental rights] cases alike, critical rights are at stake. With respect to the former, the framers of our Constitutions, and the courts interpreting those charters, have determined that counsel was required to ensure that liberty interests and [due] process rights are protected. With respect to the latter, our General Assembly has decided that counsel for the child is required because of the primacy of children's welfare, the fundamental nature of the parent-child relationship and the permanency of termination. The legislature has codified a process that affords a full and fair opportunity for all of the affected parties to be heard and to participate in a[n involuntary termination of parental rights] proceeding. The denial of mandated counsel compromises the framework of the proceedings and constitutes a structural error. Further . . .

harmless error analysis would require speculation after the fact to evaluate the effect of the lack of appointed counsel, effectively requiring proof of a negative. For all of these reasons, we hold that the failure to appoint counsel for a child involved in a contested, involuntary termination of parental rights proceeding is a structural error and is not subject to harmless error analysis.

*L.B.M.*, 161 A.3d at 183 (internal citations and quotation marks omitted).

With respect to the duties and obligations of a child's legal counsel, this Court further stated:

Regarding the role of child's legal counsel, this Court has explicitly rejected the notion that child's legal counsel fulfills his or her obligations under Section 2313(a) "by discerning [the child's] preference and report[ing] it to the court[.]" [*Interest of D.G.*, 241 A.3d 1230, 1237 (Pa. Super. 2020)]; *see also* [*Interest of D.N.G.*, 230 A.3d 361, 366 (Pa. Super. 2020)].

Indeed, this Court has stated that such a

narrow characterization of legal counsel's duties misstates [the child's legal counsel's] obligation to his [or her] client pursuant to [Section] 2313(a). While legal representation in this context necessarily involves talking to the child client and reporting the child's preferences to the court, it is in no way limited to those two actions. To the contrary, pursuant to the majority of justices in *In re Adoption of L.B.M.*, [161 A.3d] at 180[,] **[the child's legal counsel is] required to advocate on behalf of [the child] and provide zealous client-directed representation of [the child's] legal interests**.

*D.N.G.*, 230 A.3d at 366 (citation omitted); *see also In re P.G.F.*, [247 A.3d 955, 966 (Pa. 2021)] (stating that "[g]enerally, an attorney acting as a child's legal counsel must, at a minimum, attempt to ascertain the child's preference and **advocate on the child's behalf**.)" (emphasis added)).

***H.H.N.***, 296 A.3d at 1264-65 (some emphasis added) (footnotes omitted) (some brackets and parentheses in original).[6]  Moreover, we explained "that limiting child's legal counsel's advocacy to the mere reporting of the child's preferred outcome to the trial court at the [involuntary termination] hearing, renders counsel's representation insufficient and deprives the child of his or her statutory right to counsel under 23 Pa.C.S.[A.] § 2313(a)."  ***Id.*** at 1265-1266.

During a contested involuntary termination hearing in ***H.H.N.***, the trial court dismissed court-appointed legal counsel for the children in the middle of the child welfare agency's case-in-chief due to counsel's inattentiveness and disruption through his use of his cellular telephone.  In excusing legal counsel, the trial court directed legal counsel to report on his interviews with the children at a forthcoming goal change hearing.  ***See id.*** at 1260-61.  After considering these actions, we found that the trial court committed structural error and "deprived [the c]hildren of their statutory right to counsel."  ***Id.*** at 1266 (citations omitted).  We rejected the trial court's determination that legal counsel's presence "was not necessary because his role as [the c]hildren's

_____

[6] Our Supreme Court has declined to adopt a requirement that a child's legal representative **must** divulge his client's preferences.  ***See K.M.G.***, 240 A.3d at 1237-1238 ("[W]e find nothing in the language of the Adoption Act requiring that their preference be placed on the record. . . .  Moreover, we observe that the child's legal counsel has a duty of confidentiality . . . such that they should not be compelled to disclose the child's preferences.").

legal counsel was simply to interview [the c]hildren and report his findings to the court." *Id.* at 1265.

Instantly, similar to *H.H.N.*, the trial court excused legal counsel for the Children, Attorney Walters, albeit at her request, in the midst of the subject termination hearing. *See* N.T., 8/27/24 (Volume 1), at 101. As noted, following Attorney Walters' departure, the court proceeded to hear testimony from Mother, the maternal grandmother, and Father, as well as closing arguments. Throughout these critical stages of the termination proceedings, the Children were deprived of the benefit of representation of legal counsel. *See id.* at 101-181. Critically, in so doing, the trial court appeared to misapprehend Attorney Walters' role as legal counsel for the Children by dismissing her after she reported the Children's preferences. *See id.* at 101. Thus, like *H.H.N.*, the trial court deprived the Children of their statutory right to counsel, committing structural error. 296 A.3d at 1266.

Accordingly, we are constrained to vacate the decrees granting DHS's petitions to involuntarily terminate Mother's parental rights to the Children and remand for a new termination hearing. Upon remand, the trial court shall appoint counsel to represent the legal interests of the Children for the full contested involuntary termination proceeding pursuant to Section 2313(a). *See* 23 Pa.C.S.A. § 2313(a); *K.M.G.*, 240 A.3d at 1235.

Decrees vacated. Cases remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>5/15/2025</u>